E. R. REID et al., Plaintiffs-
Appellants,

v.

INTERNATIONAL UNION, UNIT-
ED AUTOMOBILE, AEROSPACE
AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA (UAW–
AFL–CIO), DISTRICT LODGE 1093,
Defendant-Appellee.

No. 72–1596.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted March 24, 1973.

Decided May 24, 1973.
Rehearing Denied June 15, 1973.

Stephen I. Schlossberg, Detroit, Mich.
(John A. Fillion, M. Jay Whitman, De-
troit, Mich., Ungerman, Grabel, Unger-
man & Leiter, Tulsa, Okl., and Rauh &
Silard, Washington, D. C., of counsel, on
the brief), for defendant-appellee.

Jonathan C. Gibson, San Diego, Cal.
(Rex H. Reed, Gall, Lane, Powell & Kil-
cullen, Washington, D. C., Gibson &
Kennerson, San Diego, Cal., and Kothe
& Eagleton, Tulsa, Okl., on the brief),
for plaintiffs-appellants.

Before BREITENSTEIN and DOYLE, Circuit Judges, and DURFEE,* Judge, Court of Claims.

BREITENSTEIN, Circuit Judge.

Plaintiffs-appellants, nonunion employees of McDonnell Douglas Corporation, sued defendant-appellee International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW–AFL–CIO), District Lodge 1093, for declaratory judgment, injunctive relief, and damages, and alleged that over their objections, the Union wrongfully spent for political and ideological purposes agency fees which they were compelled to pay to the Union under a collective bargaining agreement between the Union and their employer. The trial court granted summary judgment in favor of the Union.

This case is here for the second time. The complaint named both the Union and the employer McDonnell Douglas as defendants. The trial court dismissed the action against the Union on the ground that the preemption doctrine created exclusive jurisdiction to hear the matter in the National Labor Relations Board and dismissed the employer because of the failure of the complaint to state a claim for which relief could be granted. In Reid v. McDonnell Corporation, 10 Cir., 443 F.2d 408, we affirmed the dismissal of the employer and reversed the dismissal of the Union. With regard to the Union we held, Ibid. at 412, that jurisdiction "conceivably" exists under Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842, and like cases. In so holding we noted that we did not intimate that the plaintiffs have asserted a meritorious claim and that to establish a breach of the duty of fair representation the plaintiffs must show the "union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." 443 F.2d at 412, n. 13.

In 1965 and 1968, the employer or its predecessor and the Union made collective bargaining agreements which included provisions for an agency shop. As a condition of continued employment, employees were required either to be a member of the Union and pay Union dues or to pay to the Union monthly agency shop fees equivalent to the dues which Union members paid. The plaintiffs are not members of the Union. They allege that the Union used a portion of their compulsory agency fees in the support of political and economic doctrines, ideologies, and legislative programs to which they are opposed and which were not reasonably necessary to collective bargaining.

The Union concedes (1) it spends compulsory agency fees and union dues for the support of candidates for state and local office and for legislative, educational, citizenship, and social objectives of the Union, (2) it stands in a fiduciary relationship to plaintiffs and owes them the duty of fair representation, and (3) an employee who must pay agency fees as a condition of continued employment and who objects to the use of a portion of his fees for political and ideological purposes with which he disagrees has a right, after specifically informing the Union of his objection, to request and receive a pro rata rebate.

For several years before the filing of the complaint in November, 1967, the constitution of the Union provided that a member could divert the portion of his dues allocated to the "Local and International Citizenship Funds" into a nonpartisan citizenship organization. In 1968 the Union replaced this provision with one which gives both a member and a payer of agency fees an intra-union remedy whereby he can receive a pro rata rebate of that portion of his dues or fees spent for political and ideological causes to which he objects.[1] Identical

---

* Sitting by designation.

1. Art. 16, § 7 of the 1968 constitution reads:

"Any member shall have the right to object to the expenditure of a portion of his dues money for activities or causes

language is found in the currently effective 1970 constitution of the Union. Another provision of the constitution gives nonmembers covered by agency shop clauses "all the material benefits to which members are entitled." Thus, the rebate procedure is available to each of the plaintiffs. None of them have tried to utilize it or to exhaust appeal procedures available under the Union constitution. Those procedures culminate in the Public Review Board which is provided by the Union constitution and which is made up of seven persons not associated with the Union.

The Supreme Court has held that an agency shop arrangement which leaves union membership optional with employees but requires, as a condition of continued employment, nonunion employees to pay to the union sums equal to the dues of union members is not prohibited by §§ 7 and 8 of the National Labor Relations Act, 29 U.S.C., §§ 157 and 158, and that § 8(a)(3), 29 U.S.C. § 158(a)(3) does not prohibit such an arrangement. National Labor Relations Board v. General Motors Corp., 373 U.S. 734, 735, 83 S.Ct. 1453, 10 L.Ed.2d 670. In upholding federal jurisdiction in the instant case we expressed no opinion on whether the plaintiffs had asserted a meritorious claim, 443 F.2d at 413, n. 13, and cited Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842.

Plaintiffs argue that the Union breached the fair representation duty by the unlawful misappropriation of agency fees for political and ideological expenditures objectional to them. The first question is the lawfulness of this use of the fees. In Machinists v. Street, 367 U.S. 740, 770, 81 S.Ct. 1784, 6 L.Ed.2d 1141, the Supreme Court held that § 2 of the Railway Labor Act, 45 U.S.C. § 152, forbade the exaction of funds from members for the support of political causes to which they objected. This decision was followed by Railway Clerks v. Allen, 373 U.S. 113, 83 S.Ct. 1158, 10 L. Ed.2d 235, which discusses the relief which might be granted a dissenter in an appropriate case. Ibid. at 120–123, 83 S.Ct. 1158. The dissenter must make his objection known to the union, and it has the burden of establishing what percentage of total union expenditures are for political purposes. The opinion suggests that a decree might order refund of the exacted funds in the proportion that union political expenditures bear to total union expenditures and a reduction of future exactions by the same proportion. As to the latter, the court recognized the practical difficulty caused by fluctuating expenditures. Ibid. at 122, 83 S.Ct. 1158. The opinion concluded by reminding the parties "of the availability of more practical alternatives to litigation for the vindication of the rights and accommodation of interests here involved." Ibid. at 124, 83 S.Ct. at 1164.

The Street and Allen decisions were under the Railway Labor Act. We are concerned with the National Labor Relations Act. Our first decision in this case recognized the difference and said that we cannot agree that the rationale

---

primarily political in nature. The approximate proportion of dues spent for such political purposes shall be determined by a committee of the International Executive Board, which shall be appointed by the President, subject to the approval of said Board. The member may perfect his objection by individually notifying the International Secretary-Treasurer of his objection by registered or certified mail; provided, however, that such objection shall be timely only during the first fourteen (14) days of Union membership and during the fourteen (14) days following each anniversary of Union membership.

An objection may be continued from year-to-year by individual notifications given during each annual fourteen (14) day period.

"(b) If an objecting member is dissatisfied with the approximate proportional allocation made by the committee of the International Executive Board, or the disposition of his objection by the International Secretary-Treasurer, he may appeal directly to the full International Executive Board and the decision of the International Executive Board shall be appealable to the Public Review Board or the Convention at the option of said member."

of the Railway Act cases applies to the present controversy. 443 F.2d at 410–411. On this appeal the Union does not rely on the difference between NLRA and RLA. Instead, it says that in recognition of the RLA cases it has adopted a complying intra-union remedy.

The 1968 amendment to the Union constitution provides that any member may object to the expenditure of a portion of his dues for "activities or causes primarily political in nature." The proportion of dues spent for political purposes is determined by a committee of the International Executive Board. Objections must be made to the International Secretary-Treasurer and renewed annually. If an objector is dissatisfied with the porportional allocation or the disposition of his objection he has appeal rights which culminate in the Public Review Board made up of nonunion personnel. Nonmembers covered by agency shop contracts have the rights of members.

We are not impressed by the plaintiffs' attacks on the remedy which the Union has provided. We believe that it is a good faith effort to comply with the teachings of Street and Allen. No plaintiff has tried to utilize the procedure. We do not know how it will work in actual practice. We are not confronted with any dispute over its application or operation. Our problem is whether the record supports a claim of unfair representation.

■ Our first decision holds that plaintiffs' claim of unfair representation is sufficient to establish jurisdiction in the federal courts under the doctrine of Vaca v. Sipes, 386 U.S. 171, 87 S.Ct 903, 17 L.Ed.2d 842. 443 F.2d at 411–412. It did not determine the merit of that claim. The question of merit must be determined under the standards mentioned in Vaca, 386 U.S. at 190, 87 S.Ct. 903, and those stated in the later decision of Motor Coach Employees v. Lockridge, 403 U.S. 274, 299, 301, 91 S.Ct. 1909, 29 L.Ed.2d 473. If those standards are not met, the claim of unfair representation falls. The standards are whether union conduct is arbitrary, discriminatory, or in bad faith, 386 U.S. at 190, 87 S.Ct. 903, and whether there is fraud, deceit, dishonest conduct, or discrimination that is intentional, severe, and unrelated to legitimate union activities. 403 U.S. at 299, 301, 91 S.Ct. 1909.

■ In the record before us we find no facts establishing discrimination, fraud or dishonesty. Plaintiffs, by speculative, conclusionary, and argumentative statements condemn the Union remedy as unfair, unreasonable, and unworkable. Those statements do not suffice to create an issue of fact. Bumgarner v. Joe Brown Company, 10 Cir., 376 F.2d 749, 750, cert. denied, 389 U.S. 831, 88 S.Ct. 99, 19 L.Ed.2d 90, and Applegate v. Top Associates, Inc., 2 Cir., 425 F.2d 92, 96. We have no concrete particulars to sustain any of the elements which the Supreme Court says are pertinent to a claim of unfair representation. At the most the statements are conjectures as to how the union remedy might work in imagined circumstances.

■ We attach no significance to the fact that the Union remedy is provided by a constitutional amendment adopted during the pendency of this litigation. It may be true that the Union saw the handwriting on the wall and decided that under Street and Allen some remedy must be made available. The question is whether that remedy, on its face, negates the unfair representation charge. We believe that it does.

■ This conclusion makes it unnecessary to decide whether exhaustion of union remedies is a prerequisite to court action, or whether the trial court erred in not permitting the case to proceed as a class action. The question of the plaintiffs' right to amend their complaint or to file a supplemental complaint is committed to the discretion of the trial court. Rule 15(a) and (d), F. R.Civ.P.; Arp v. United States, 10 Cir.,

244 F.2d 571, 574, cert. denied, 355 U.S. 826, 78 S.Ct. 34, 2 L.Ed.2d 40. The record shows no abuse of that discretion.

Affirmed.