**George L. SEAY et al.,**
**Plaintiffs-Appellants,**

v.

**McDONNELL DOUGLAS CORPORATION et al., Defendants-Appellees.**

No. 74-2081.

United States Court of Appeals,
Ninth Circuit.

March 31, 1976.

---

* The Honorable William G. East, United States District Judge for the District of Oregon, sitting by designation.

Jonathan C. Gibson (argued), San Diego, Cal., for plaintiffs-appellants.

Joseph Rauh (argued), of Rose, Klein & Marias, Los Angeles, Cal., for defendants-appellees.

## OPINION

Before SNEED and KENNEDY, Circuit Judges, and ZIRPOLI, District Judge.*

ZIRPOLI, District Judge:

█ This case involves a dispute between non-union employees of McDonnell Douglas and the International Association of Machinists (hereafter "IAM")[1] concerning the purposes for which the union uses agency fees paid by plaintiffs pursuant to the collective bargaining agreement between IAM and McDonnell Douglas.[2] Plaintiffs appeal from an order of the district court granting summary judgment in favor of the defendant union.

### Background

In *International Association of Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961), and *Brotherhood of Railway Clerks v. Allen*, 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963), the Supreme Court held that unions may not use union dues or agency fees to finance political activities if members or fee payors object to the use of those funds for such purposes.[3] In 1967 plaintiffs instituted the instant suit alleging that over plaintiffs' known objections, the defendant union was utilizing agency fees to finance political activities. The district court dismissed the suit on the ground that its jurisdiction had been preempted by the National Labor Relations Act. This court reversed holding that the district court had jurisdiction of the suit under section 301 of the Labor-

Management Relations Act, 29 U.S.C. § 185. *Seay v. McDonnell Douglas Corp.*, 427 F.2d 996 (9th Cir. 1970). We found that the complaint alleged a breach of the collective bargaining agreement on two grounds. First, the complaint alleged a breach of the union's duty of fair representation; second the complaint alleged a breach of the implied term of the contract that agency fees be used only for the negotiation or administration of the collective bargaining agreement and for expenses incurred in the adjustment of grievances and disputes. *Id.* at 1000–001. We therefore reversed the order of the district court and ordered that the complaint be reinstated with leave to amend. *Id.* at 1004.

On June 28, 1973, three years after this court held that the district court had jurisdiction over plaintiffs' complaint, IAM issued Circular No. 669 which provided in pertinent part:

POLICY Accordingly, and effective July 1, 1973, the following policy is hereby established.

1. Any dues-paying member or non-member who is covered by a collective bargaining agreement containing a "union shop" or "agency shop" provision shall have the right to object to the expenditure of a portion of his dues or agency fees for the activities or causes primarily political in nature.

2. By action of the Executive Council, the United States members of the Committee on Law are designated to determine the approximate annual proportion of dues spent for such political purposes.

---

\* Honorable Alfonso J. Zirpoli, United States District Judge, Northern District of California, sitting by designation.

1. On June 12, 1972, the district court dismissed plaintiffs' complaint against McDonnell Douglas for failure to state a claim. Plaintiffs do not appeal that dismissal.

2. Pursuant to the collective bargaining agreement entered into by IAM and McDonnell Douglas, all McDonnell Douglas employees are required as a condition of employment to join the union or to pay agency fees which equal the union dues paid by union members. This is a valid union security clause. *NLRB v. General*

*Motors Corp.*, 373 U.S. 734, 735, 83 S.Ct. 1453, 1455, 10 L.Ed.2d 670, 671 (1963).

3. While the holdings of *Street* and *Allen* turned on a construction of the provisions of section 2, Eleventh of the Railway Labor Act, 45 U.S.C. § 152, Eleventh, this court has held that the holdings of these cases are equally applicable to the National Labor Relations Act, 29 U.S.C. § 158(a)(3). Thus it is immaterial that the NLRA rather than the Railway Labor Act is involved in the present litigation. *Seay v. McDonnell Douglas Corp.*, 427 F.2d 996, 1003 (9th Cir. 1970).

The Chairman of the Committee on Law shall preside as Chairman.

3. A member or non-member may perfect his objection by individually notifying the General Secretary-Treasurer and the Recording Secretary of the local or district lodge to which he belongs or to which he must pay agency shop fees by registered or certified mail; provided, however, that such objection shall be timely only during the first 14 days of union membership and during 14 days following each anniversary of union membership.

4. An objection may be continued from year to year by individual notifications as provided in paragraph 3 above and must be given during each annual anniversary 14-day period.

5. If an objecting member or agency fee payer is dissatisfied with the approximate proportional allocation made by the Law Committee, he may appeal the ruling of the Committee to the Executive Council.

6. If the objector is not satisfied with the decision of the Executive Council, he shall have the right of an appeal to the Convention in accordance with the provisions of Article "L" of the IAM Constitution.

7. Consistent with this policy, any objector who has filed in the past such a complaint with his local or district lodge shall have such objection honored retroactively, provided such objector files with the Recording Secretary and the General Secretary-Treasurer a copy of such letter with a current objection as provided in paragraph 3 above.

8. Whatever amount is determined by the Law Committee to be allocable for political purposes, one-half will be rebated by the affected local or district lodge and one-half by the Grand Lodge.

9. The amount of reduced dues for such objectors shall be a matter of record and so stated at the bottom of the monthly report furnished by the General Secretary-Treasurer.

10. Where there is in effect an automatic dues deduction or checkoff with an employer, the Financial Secretary or Secretary-Treasurer shall refund such dues or agency fee payments checked off by monthly check until the anniversary date of the checkoff period, and one-half of that amount rebated to the objector shall be deducted from the per capita tax forwarded to the Grand Lodge in his behalf.

11. The period of retroactivity shall be from the time that the objection has been made to the use of dues money or agency fees for political purposes.

Defendant then moved for summary judgment arguing that the inauguration of this new policy negated any charge that it had breached its duty of fair representation. In ruling on defendant's motion the district court noted that defendant conceded that it spends money for political activities, that it stands in a fiduciary relationship to plaintiffs and owes them a duty of fair representation, and that employees who object to the expenditure of union funds for political purposes are entitled to a pro rata rebate of their dues or agency fees, once they make their objections known to the union. Based on these concessions the district court observed that there was nothing left for it to do but to determine the amount of rebate to which plaintiffs were entitled. *Seay v. McDonnell Douglas Corp.*, 371 F.Supp. 754, 757 and n.6 (C.D.Cal.1973). The court went on to hold, however, that since the union had voluntarily adopted a procedure whereby plaintiffs were entitled to a rebate, any charge of breach of the duty of fair representation was negated since the union remedy was fair, reasonable, and adequate on its face. The district court therefore granted defendant's motion for summary judgment. Plaintiffs now appeal that ruling.[4] The issue before this court is whether de-

---

4. Plaintiffs also appeal orders of the district court denying their motions to certify the class and to join additional plaintiffs and denying them leave to amend the pretrial order and the complaint to allege that use of agency fees for such purposes as maintaining a strike fund and paying death benefits is also unlawful.

fendant's promulgation of Circular No. 669 entitled them to summary judgment.[5]

### The Effect of the Promulgation of Circular No. 669

*Mootness*

Defendant contends that by implementing the intra-union remedy of Circular No. 669 the union has provided plaintiffs with all of the relief to which they would have been entitled had the case been fully adjudicated, and that therefore the case is moot. While this argument is persuasive on its face, it bears further scrutiny.

■ This is a case in which defendant voluntarily ceased its allegedly wrongful conduct *after* litigation had been instituted. The Supreme Court has held that under these circumstances, voluntary termination of allegedly wrongful conduct does not deprive a court of its power to act. *United States v. W. T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303, 1309 (1953). The case should not be held moot unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Pacific Maritime Association v. ILWU*, 454 F.2d 262 (9th Cir. 1971), *cited with approval* in *Electrical Workers 77 v. Puget Sound Power and Light Co.*, 506 F.2d 523, 524 (9th Cir. 1974), *cert. denied*, 420

U.S. 992, 95 S.Ct. 992, 43 L.Ed.2d 674 (1975). In the instant case there is no assurance that the union will continue to abide by the provisions of Circular No. 669 once the present litigation is terminated. It has known of its obligation to provide for a rebate of fees used for political purposes since the Supreme Court's 1961 decision in *Street* yet it did not comply with its obligations under *Street* until 1973, six years after the instant suit was instituted and 12 years after *Street* was decided. In light of these circumstances, it would be error for this court to conclude that this litigation is moot.

### The Propriety of Granting Summary Judgment

■ The district court premised its grant of summary judgment on the issue of breach of the duty of fair representation on a finding that the intra-union remedy was a fair, reasonable, and adequate procedure. *Seay v. McDonnell Douglas, supra*, 371 F.Supp. at 763. In reaching this conclusion, the district court relied heavily on the Tenth Circuit decision in *Reid v. UAW, District 1093*, 479 F.2d 517 (10th Cir.), *cert. denied*, 414 U.S. 1076, 94 S.Ct. 572, 38 L.Ed.2d 483 (1973), a case on all fours with the instant case.[6] The district court also

---

5. Plaintiffs contend that our earlier opinion in this case, *Seay v. McDonnell Douglas, supra*, constituted a holding on the merits that defendant not only had breached the collective bargaining agreement but that it had also violated plaintiffs' constitutional rights and that it was therefore contrary to the doctrine of law of the case for the district court to hold that defendant had not breached its duty of fair representation. We find this to be an issue of little moment. Regardless of whether that earlier decision established the law of the case concerning defendant's liability, the language of that decision makes it clear that once defendant admitted, as it did, that it had used agency fees for political activities, there was nothing left for plaintiffs to prove other than that they had made timely objection to the use of their fees for those purposes. As the district court itself noted, once the case was in this posture, there was nothing left for the court to do but to determine the amount of the rebate to which plaintiffs were entitled. *Seay v. McDonnell Douglas, supra*, 371 F.Supp. at 757 n.6.

It was at this juncture that defendant promulgated Circular No. 669 and it was in light of the institution of this new procedure that the district court granted defendant's motion for summary judgment. The question to be answered by this court is whether defendant's promulgation of Circular No. 669 should be permitted to deprive plaintiffs of the judicially imposed remedy to which they otherwise would have been entitled.

6. Both *Reid* and the instant case involve the use of agency fees for political purposes over the objections of the fee payors and both involve a situation in which the defendant provided an intra-union remedy only after it became clear that plaintiffs must prevail in the district court. In affirming the district court's order granting defendant's motion for summary judgment, the Tenth Circuit held:

Plaintiffs, by speculative, conclusionary, and argumentative statements condemn the Union remedy as unfair, unreasonable, and unworkable. Those statements do not suffice to create an issue of fact. We have no concrete particulars to sustain any of the

relied on a suggestion in *Brotherhood of Railway Clerks v. Allen, supra,* that an internal union remedy might provide a useful alternative to litigation on the issue of remedy. In discussing this question, the court in *Allen* stated:

> [W]e think it appropriate to suggest . . . a practical decree to which each respondent proving his right to relief would be entitled. Such a decree would order (1) the refund to him of a portion of the exacted funds in the same proportion that union political expenditures bear to total union expenditures, and (2) a reduction of future such exactions from him by the same proportion. We recognize that practical difficulties may attend a decree reducing an employee's obligations under the union-shop agreement by a fixed proportion, since the proportion of the union budget devoted to political activities may not be constant. The difficulties in judicially administered relief, although not insurmountable (a decree once entered would of course be modifiable upon a showing of changed circumstances), should, we think, encourage petitioner unions to consider the adoption by their membership of some voluntary plan by which dissenters would be afforded an internal union remedy. . . . If a union agreed upon a formula for ascertaining the proportion of political expenditures in its budget, and made available a simple procedure for allowing dissenters to be excused from having to pay this proportion of moneys due from them under the union-shop agreement, prolonged and expensive litigation might well be averted. . . . The courts will not shrink from affording what rem-

edies they may, with due regard for the legitimate interests of all parties; but it is appropriate to remind the parties of the availability of more practical alternatives to litigation for the vindication of the rights and accommodation of interests here involved.

*Id.,* 373 U.S. at 122–124, 83 S.Ct. at 1164, 10 L.Ed.2d at 242.

By promulgating Circular No. 669, the union has, in effect, adopted the procedure outlined in *Allen.* The difference between the union remedy and a court decree lies principally in the identity of the body which determines the amount of rebate to which plaintiffs are entitled. Plaintiffs contend that they are entitled to a judicial determination of this amount and strenuously object to the intra-union remedy which leaves determination of that amount in the hands of the union leadership.

Plaintiffs object to the intra-union remedy on two grounds. The first is that under the rule of *Brotherhood of Railway Clerks v. Allen, supra,* the union bears the burden of proof in establishing the percentage of plaintiffs' fees which it is entitled to retain. 373 U.S. at 122, 83 S.Ct. at 1163, 10 L.Ed.2d at 241. Under the intra-union remedy of Circular No. 669, the burden falls on plaintiffs to challenge the amount which the union claims it spends on political activities. Thus by instituting this intra-union remedy defendant seeks to deprive plaintiffs of an important procedural right to which they would be entitled were a judicial remedy to be imposed under *Allen.*

Plaintiffs' second objection is that the union will not fairly and honestly determine the amount of the rebate. Plaintiffs con-

elements which the Supreme Court says are pertinent to a claim of unfair representation. At the most the statements are conjectures as to how the union remedy might work in imagined circumstances.
479 F.2d at 520 (citations omitted).
In the case before us plaintiffs have raised serious questions concerning the willingness and ability of the union to fairly and accurately determine the amounts spent on political activities. We will not hold that plaintiffs must exhaust this intra-union remedy before being permitted to challenge it. Plaintiffs instituted

this litigation in 1967. To now require them to exhaust the intra-union remedy with its lengthy appellate procedure, including the possibility of a four year delay in bringing an appeal to the union convention, and to then require them to institute their litigation anew in the district courts imposes an intolerable burden on plaintiffs. We therefore decline to follow the Tenth Circuit decision in *Reid* and hold that the district court erred in not granting plaintiffs a full hearing on the issue of the fairness and adequacy of the intra-union remedy.

tend that the accounting procedures utilized by the union mask many political expenditures. They also argue that many records have been concealed or destroyed. Thus, they argue that the union cannot be depended upon to fairly determine the amount to which plaintiffs are entitled and that judicial supervision is required.

We have concluded that the district court erred in its summary disposition of the question of the fairness and adequacy of the intra-union remedy. Plaintiffs have raised a genuine issue of fact as to whether the union will act fairly and honestly in presiding over this dispute. Bearing in mind that the union would bear the burden of proof in defending its allocations were a judicial remedy to be imposed, and bearing in mind that defendant has been on notice since the Supreme Court decisions in *Street* and *Allen* in 1961 and 1963 that objecting members and agency fee payors are entitled to such a remedy, we conclude that the district court had an obligation to hold a hearing on the disputed factual question of whether or not the union could and would administer its intra-union remedy fairly.[7] We therefore reverse the district court's order granting summary judgment in favor of defendant.

### Other Issues
#### Denial of Class Action Status

█ On March 16, 1972, the district court ruled that this action was not maintainable as a class action. In denying plaintiffs' motion to certify the class the district court found that the number of potential plaintiffs was not so great as to make joinder impractical. The court noted that at the time the motion was filed, counsel for plaintiffs had suggested the name of only one person, in addition to the named plaintiffs, who had formally objected to the union concerning the use of his fees for political purposes.

Plaintiffs twice renewed their motion for class certification and each time the district court denied the motion. Then in March, 1973, plaintiffs moved to join 46 employees as additional parties plaintiff. This motion was denied as being untimely.

After considering plaintiffs' objections to these rulings, this court concludes that the district court did not abuse its discretion and that its orders denying plaintiffs' motions to certify the class and to join additional parties plaintiff should be affirmed.

### Leave to Amend the Complaint

█ In July, 1973, plaintiffs moved to amend their complaint and the pretrial order to include the issue of whether the union could use agency fees to finance organizing expenses, the union strike fund, death benefits to union members, and the union newspaper. The district court denied these motions.

The extent to which some of these questions could be litigated at trial is not clear under the pretrial order. Although the case is treated as a challenge to political expenditures, the legal theory was stated as whether agency fees could only be used for "organizing, collective bargaining, negotiating and administering collective bargaining agreements, and the cost and adjustment of settlement of disputes." Pretrial Order at 17–18, C.T. 1848–49; *see* Second Amended Complaint at 9–10, C.T. 501–02; *Seay v. McDonnell Douglas Corp., supra,* 427 F.2d at 1000.

In any event, it was within the trial court's discretion to grant or deny the motions to amend, and plaintiffs have not shown that the court abused its discretion. We affirm the order denying these motions. In light of the remand for trial on the political expenditure issue, however, plaintiffs remain free to renew their motions before the trial court.

### Conclusion

The judgment of the district court granting summary judgment is reversed because

---

7. In conducting such a hearing, the district court should accord due weight to the union's obligation to justify the fairness and adequacy

of the remedy and the accuracy of the calculations made thereunder.

there are genuine issues of fact concerning the fairness and adequacy of the intra-union remedy. The orders of the district court denying the motions for class certification, for leave to join additional parties plaintiff, and for leave to amend the complaint and pretrial order are affirmed. The case is remanded to the district court for further proceedings not inconsistent with this opinion.