**Robert PRICE, et al.**

v.

**INTERNATIONAL UNION, UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, Marine Draftsmen Association, Local 571, UAW, AFL–CIO and Electric Boat Division, General Dynamics Corporation.**

Civ. No. H–84–1221(MJB).

United States District Court,
D. Connecticut.

April 11, 1985.

Edward T. Lynch, Jr., Dennis G. Ciccarillo, Michalik & Lynch, New Britain, Conn., Edward F. Hughes, North Springfield, Va., for plaintiffs.

Michael B. Nicholson, Daniel W. Sherrick, Detroit, Mich., Robert A. Goldstein, Kliegman, Goldstein, Israel & Cooper, New York City, Glenn E. Coe, Perakos & Coe, New Britain, Conn., Arthur G. Telegen, Foley, Hoag & Eliot, Boston, Mass., and Barbara J. Collins, Hartford, Conn., for defendants.

RULING ON PENDING MOTIONS

BLUMENFELD, Senior District Judge.

## I. *Facts*

This action is brought by employees of the General Dynamics Corporation, Electric Boat Division, against their employer, their local union (defendant Marine Draftsmen Association-UAW, Local 571), and their international union.[1] Plaintiffs are members of a clerical and technical workers bargain-

---

1. For convenience, the union defendants will be referred to hereinafter as "the union."

ing unit represented by the union. The collective bargaining agreement between General Dynamics and the union includes a "union security" clause which requires all employees in the bargaining unit to join the union within 31 days of their employment.[2] Pursuant to this clause, the union can demand the discharge of any member of the bargaining unit who fails to pay dues and initiation fees to the union, and General Dynamics would be subject to suit for breach of the contract if it failed to discharge such an employee.

Plaintiffs here have complied with the union security clause, but have also informed the union that they protest the payment of any amounts which the union will expend for purposes other than collective bargaining or contract administration related to this bargaining unit (*e.g.*, expenditures in support of candidates for public office). The union, however, insists that plaintiffs pay their dues and initiation fees in full, and has informed the plaintiffs that it will seek discharge of any member of the bargaining unit who refuses to pay. The union has also informed plaintiffs of a procedure provided by the constitution of the International, pursuant to which plaintiffs may seek a rebate of that portion of their dues which the union spends on political causes which plaintiffs find objectionable.

Plaintiffs contend that the union's insistence on full payment of dues and fees violates their first amendment speech and associational rights, fifth amendment due process rights, and statutory right to fair representation. They sought a preliminary injunction, which was denied by this court on December 21, 1984 on the grounds that plaintiffs had shown neither irreparable injury nor a likelihood of success on the merits. Several motions are currently pending.

## II. *Plaintiffs' Motion to Amend Complaint*

Plaintiffs' original complaint was brought by Robert Price and Timothy Sulli-

van, "on behalf of themselves and all others similarly situated," and included class-action allegations. A "motion to maintain class action" was also filed. On December 13, 1984, the court granted a motion to amend the complaint, adding 250 additional plaintiffs. Plaintiffs have now moved to amend the complaint a second time.

The proposed amended complaint drops the class allegations, and clarifies certain other aspects of plaintiffs' claims. The union objects to the amendment, contending that it interferes with the briefing schedule established by the court at the hearing on December 21, 1984. That schedule required the union to file a motion to dismiss the complaint, or in the alternative for summary judgment, on January 14, 1985, the very day that plaintiffs filed their motion for leave to amend. It is impossible, the union claims, to respond to a complaint by moving for its dismissal when on the day the dismissal motion is due to be filed defendants receive an amended complaint.

The court's examination of the proposed amended complaint has discovered no prejudice to be suffered by defendants if the amendment is allowed. Under Fed. R.Civ.P. 15(a), leave to amend shall be "freely given when justice so requires." Amplification of previously alleged claims is one of the clearest cases for leave to amend. 3 *Moore's Federal Practice* ¶ 15.-08[3] (1984). Accordingly, plaintiffs' motion to amend the complaint is granted.

## III. *Motion to Strike*

In connection with their motion for summary judgment, discussed below, plaintiffs filed a "statement of material facts as to which there is no genuine issue to be tried," as required by Local Rule of Civ.P. 9(c). The union has moved to strike this statement on two grounds. First, plain-

**2.** Such a clause is commonly referred to, and will be referred to hereinafter, as a "union shop" clause.

**1246**

tiffs' statement includes exhibits which are not referred to in any affidavit filed by plaintiffs, and are not authenticated, sworn or certified copies as required by Fed.R. Civ.P. 56(e). Second, plaintiffs' statement consists in substantial part of conclusory factual allegations and legal contentions, also in contravention of Rule 56.

▋ Plaintiffs' statement and exhibits are vulnerable to this attack. On a motion for summary judgment, a court may not consider materials that would not be admissible in evidence at trial, and the exhibits of course would not be admissible without some form of authentication. *See* 6 *Moore's Federal Practice* ¶ 56.11[1.–8] (1983) and cases there cited; Fed.R.Evidence 901. Moreover, the conclusory allegations and legal contentions contained in plaintiffs' statement are not what is contemplated by Local Rule 9(c).

▋ However, the court does not find it necessary to strike plaintiffs' statement and exhibits. Among the latter, some are duplicative of other exhibits already in the record, and others are irrelevant to the issues raised by the motions for summary judgment. The court is able to accord the various documents submitted the weight they deserve, and can adequately separate factual from non-factual allegations. Defendants' motion to strike is therefore denied.

### IV. *Motions for Summary Judgment*

The plaintiffs and the union defendants have each moved for summary judgment. Both parties have filed statements of material facts not in issue, as required by Local Rule of Civ.P. 9(c). Although these statements do not agree in every particular, the material facts necessary for disposition of the case, discussed above in Part I of this Ruling, are not in dispute. I therefore find that summary judgment is appropriate. *See* Fed.R.Civ.P. 56.

### A. *The Issue of Government Action*

The parties agree that, in order to prevail on their constitutional claims, plaintiffs must establish governmental involvement in the denial of their constitutional rights. The first and fifth amendments provide protection only against governmental action. *Hudgens v. NLRB,* 424 U.S. 507, 513, 96 S.Ct. 1029, 1033, 47 L.Ed.2d 196 (1976) (first amendment); *Public Utilities Commission v. Pollak,* 343 U.S. 451, 461, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952). As plaintiffs characterize the issue, "the scope of the legislative grant of power to the MDA/UAW to compel payment [of 100% of dues and fees] under threat of federally-enforced termination ... makes this action fairly attributable to the government...." Plaintiffs' Memorandum in Support of Summary Judgment at 3. The defendants contend that "state action is not present in the conduct of the Defendants in negotiating and applying a union security clause valid under the National Labor Relations Act and under applicable state law, and in UAW's expenditure of dues or fees collected under such a clause." UAW's Memorandum in Opposition to Motion for Preliminary Injunction at 3 (incorporated by reference in union defendants' Memorandum in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment). Whether the conduct at issue is the insistence on full payment, the negotiation and enforcement of the union security clause, or the expenditure of dues and fees, if the conduct is not "fairly attributable to the state," *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982), defendants are entitled to judgment as a matter of law.

In *Lugar,* the Supreme Court established a two-part approach to the question of "fair attribution."

First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from

state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.

*Id.*

### 1. *Was there a government-created right or privilege?*

The Court of Appeals for the District of Columbia Circuit has recently applied the *Lugar* analysis to a union's use of fees collected under an "agency shop clause" which is analogous, although not identical, to the union security clause at issue here.[3] *Kolinske v. Lubbers,* 712 F.2d 471, 477–80 (D.C.Cir.1983). The court held that the first part of the *Lugar* test was not satisfied, stating:

> In employing the two-part test outlined in *Lugar,* we must first determine whether the agency shop clause and the attendant restrictions in strike benefits funded in part by those agency fees constitute an exercise of "some right or privilege created by the state or by a rule of conduct imposed by the state, or by one for whom the state is responsible." *Lugar,* 457 U.S. at 937 [102 S.Ct. at 2753]. In no sense is the agency shop clause compelled by federal law. Appellee cites no law, and our review of the NLRA fails to disclose any federal law, that forces the union and the company to adopt that provision as part of their labor contract. We are left with the question whether the authorization provided the agency shop clause by section 8(a)(3) of the NLRA [4] makes the clause an exercise of a right or privilege created by the

state or one for whom the state is responsible. We conclude that it does not.

The district court held the agency shop clause to be state action because such clauses are "expressly authorized" by Congress, and consequently, the use of such fees was subject to constitutional scrutiny. But it is well settled that a state's mere authorization of private conduct does not justify a finding of state action. *Blum v. Yaretsky,* 457 U.S. 991, 1004 [102 S.Ct. 2777, 2785, 73 L.Ed.2d 534] (1982); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 354 [95 S.Ct. 449, 455, 42 L.Ed.2d 477] (1974). While the NLRA provides a framework to assist employees to organize and bargain collectively with their employers, the NLRA is neutral with respect to the content of particular agreements. *See* NLRA § 8(d), 29 U.S.C. § 158(d); *Local 24, International Brotherhood of Teamsters v. Oliver,* 358 U.S. 283, 294–95 [79 S.Ct. 297, 303–04, 3 L.Ed.2d 312] (1959). The NLRA does not mandate the existence or content of, for example, seniority clauses, work rules, staffing requirements, or union security provisions like agency shop clauses or mandatory payroll deductions for union dues. Even though federal law provides an encompassing umbrella of regulation, the parties, like any two parties to a private contract, were still free to adopt or reject an agency shop clause with or without · government approval. Thus, the authorization for agency shop clauses provided by NLRA section 8(a)(3) does not transform agency shop clauses into a right or privilege created by the state or one for whom the state is responsible.

---

**3.** Under an "agency shop" clause, all members of the bargaining unit must pay dues and fees to the union, but are not required to become members.

**4.** Section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3) (1982), provides in pertinent part:

(a) It shall be an unfair labor practice for an employer—

(3) by discrimination in regard to hire or tenure of employment or any term or condi-

tion of employment to encourage or discourage membership in any labor organization: *Provided,* That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization ... to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later. ...

*Kolinske*, 712 F.2d at 477–78 (original footnote and citations omitted, new footnote added). *See Hovan v. United Brotherhood of Carpenters and Joiners*, 704 F.2d 641 (1st Cir.1983) (no governmental action involved where union refuses membership to one who will not take oath).

Plaintiffs believe *Kolinske* was wrongly decided. They argue that section 8(a)(3)'s explicit authorization of union security provisions such as the one at issue here embodies a strong federal policy designed to promote labor peace by eliminating the "free rider" problem, and that it is part of a statutory scheme which encourages unions and employers to enter into such agreements. Moreover, should the employer breach such a union security agreement, the union may avail itself of the assistance of the federal courts and the National Labor Relations Board in enforcing the contract. Plaintiffs contend that if viewed in this context, the union's demand, pursuant to the union security clause of the contract, that plaintiffs pay full dues and fees, carries enough of a federal imprimatur to be considered the exercise of a "right or privilege created by the government."

■ Section 8(a)(3)'s authorization of union shop clauses, however, creates no right or privilege. In fact, as amended by the Taft-Hartley Act in 1947, the statute *prohibits* closed shop clauses, which previously had been permitted.[5] Neither the original language of section 8(a)(3), which permitted closed shop clauses, nor the 1947

amendment, which prohibits closed shops but permits union shops, seeks to impose any particular form of union security clause on labor or industry. *See Algoma Plywood Co. v. Wisconsin Employment Relations Board*, 336 U.S. 301, 314, 69 S.Ct. 584, 591, 93 L.Ed. 691 (1949). Moreover, section 14(b) of the National Labor Relations Act, 29 U.S.C. § 164(b), allows any state to prohibit union shop agreements. Thus section 8(a)(3), properly viewed, does no more than disclaim any federal policy toward union security clauses. Such clauses will be enforced if state law permits it, and will not be enforced if state law prohibits their enforcement. No federal right or privilege is created by such a statute.[6]

The foregoing discussion makes it clear that plaintiffs' reliance on cases decided under section 2, Eleventh of the Railway Labor Act, 45 U.S.C. § 152, Eleventh, is misplaced.[7] In the leading case, *Railway Employees' Dept. v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), the Court held that a union shop agreement made pursuant to section 2, Eleventh did not infringe the first or fifth amendment rights of workers who sought to avoid joining the union. In order to reach the merits, the Court necessarily found the presence of government action, but that finding rested explicitly on the statutory language superseding contrary state law. *Id.* at 232, 76 S.Ct. at 718. "In other words, the federal statute is the source of the power and

**5.** A "closed shop" clause makes union membership a precondition of employment in the bargaining unit.

**6.** For an argument that the courts should not find union conduct subject to constitutional review, which relies in part on the distinction between statutes which "command" and those which "permit," *see* Wellington, *The Constitution, The Labor Union, and "Governmental Action,"* 70 Yale L.J. 345 (1961). Professor (later Dean) Wellington contends that the task of regulating union conduct is best left to Congress, which can regulate by statute after full consideration of policy options.

**7.** Section 2, Eleventh of the Railway Labor Act, 45 U.S.C. § 152 Eleventh (1982), provides in pertinent part:

Notwithstanding any other provisions of this chapter, or of any other statute or law of the United States, or Territory thereof, or of any State, any carrier or carriers as defined in this chapter and a labor organization or labor organizations duly designated and authorized to represent employees in accordance with the requirements of this chapter shall be permitted—

(a) to make agreements, requiring, as a condition of continued employment, that within sixty days following the beginning of such employment, or the effective date of such agreements, whichever is the later, all employees shall become members of the labor organization representing their craft or class:
. . . .

authority by which any private rights are lost or sacrificed." *Id.* (footnote omitted). In contrast, union security agreements permitted by section 8(a)(3) of the National Labor Relations Act must give way in the face of contrary state law. Thus, the federal statute is *not* "the source of power and authority" for such agreements.

*Hanson's* progeny includes *International Association of Machinists v. Street,* 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961), *Railway Clerks v. Allen,* 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963), and *Ellis v. Railway Clerks,* 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984). In each of these cases, the Court confronted a challenge by union members to particular uses of their union dues. In each case, the Court held that unions are prohibited from using funds collected from a member for political purposes to which the member expressly objects. But the Court explicitly rested these decisions on section 2, Eleventh of the Railway Labor Act, and not on the Constitution. Thus there was no need to consider whether the collection of fees and dues, pursuant to a statutorily-authorized union security clause, for proscribed purposes, constituted state action, and the Court expressed no opinion on this question. Likewise inapposite is *Abood v. Detroit Board of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), also relied upon by plaintiffs. In *Abood,* plaintiffs' employer was a governmental entity. Since the government was a party to the union security agreement at issue in the case, the Court never faced the state action question. The Court relied extensively on *Hanson* and *Street* in reaching the conclusion that the agency shop clause at issue in *Abood,* which was authorized by a Michigan statute covering public sector collective bargaining, was not constitutionally offensive. But nothing the Court said in

*Abood* indicated that it would extend the state action ruling of *Hanson* to non-Railway Labor Act cases.

I conclude, therefore, that *Hanson* and the cases following it do not require a finding that governmental action is present in the circumstances presented by this case. The union security clause contained in the contract among the defendants here is part of a privately bargained contract among private parties. That clause would be permissible if both state and federal law were silent about such clauses, and the existence of a permissive, but not compulsory, federal statute which may be preempted by contrary state law does not establish that the federal government is the source of authority for the clause. *Kolinske,* 712 F.2d at 476–77. *Accord Reid v. McDonnell Douglas Corp.,* 443 F.2d 408 (10th Cir.1971).[8]

### 2. *Was there a "government actor"?*

Even if the conduct at issue here did rest on a government-created right or privilege, plaintiffs would have to show that the second part of the *Lugar* test—the requirement that defendant be a state actor—is satisfied. The court in *Kolinske* addressed this issue in some detail, 712 F.2d at 478–80, and found that the traditional indicia used to attribute private conduct to the state were not present. A similar analysis in the instant case leads to the same result.

There is no allegation here that the defendants perform a traditionally public function. *Cf., e.g., Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). Nor do plaintiffs claim that the defendants conspired with state officials, or were coerced or encouraged by such officials. *Cf. Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

8. Before the decisions in *Kolinske* and *Reid,* two appellate courts had reached the opposite result in similar cases. *Seay v. McDonnell Douglas Corp.,* 533 F.2d 1126 (9th Cir.1976); *Linscott v. Millers Falls Co.,* 440 F.2d 14 (1st Cir.1971). Thus there is a conflict among the circuits on the governmental action issue in this case. The Court of Appeals for the Second Circuit has

never reached the issue. *See Buckley v. American Federation of Television and Radio Artists,* 496 F.2d 305 (2d Cir.), *cert. denied,* 419 U.S. 1093, 95 S.Ct. 688, 42 L.Ed.2d 687 (1974). In the absence of binding authority in this circuit, I consider the reasoning of the decision in *Kolinske* to be persuasive.

Finally, the fact that the collective bargaining process and the behavior of unions are extensively regulated by the federal government does not make defendants "state actors" where the government has not compelled or significantly encouraged the challenged conduct. *Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). The Supreme Court has held at least twice that union conduct is not state action. *United Steelworkers v. Sadlowski*, 457 U.S. 102, 121 n. 16, 102 S.Ct. 2339, 2350 n. 16, 72 L.Ed.2d 707 (1982) (union rule prohibiting candidates for union office from accepting contributions from nonmembers does not contravene the first amendment because there is no state action); *United Steelworkers v. Weber*, 443 U.S. 193, 200, 99 S.Ct. 2721, 2725, 61 L.Ed.2d 480 (1979) (collectively bargained affirmative action plan does not involve state action, and therefore does not present an alleged violation of the fourteenth amendment).

■ Plaintiffs also seek to bring this case within the doctrine of *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), by referring to the threat of "federally-enforced" termination of employees who refuse to pay dues and fees in full. But *Shelley* is plainly distinguishable from the instant case. In *Shelley*, the state court intervened in a private transaction between a willing seller and a willing buyer to enforce a racially restrictive covenant at the behest of a third party neighboring landowner. Here, by contrast, there has as yet been no court intervention. Thus far, the parties to the agreement have abided by it. A court's intervention to enforce the agreement will be called for only if the agreement is breached. Such intervention could occur in any suit on a contract. This possibility does not satisfy the state action criteria of *Shelley* or *Lugar*.

For the foregoing reasons, I conclude that the conduct challenged in this case is not conduct which is "fairly attributable" to the government, and defendants' motion for summary judgment must be granted as to plaintiffs' constitutional claims.

B. *The Claim for Breach of the Union's Duty of Fair Representation*

[8] Plaintiffs state as an alternative ground for relief the claim that

by negotiating the union security clause, demanding and obtaining *100%* of dues and fees from plaintiffs under threat of discharge, and spending portions of those sums for costs other than for collective bargaining, the MDA/UAW is violating the statutory duty of fair representation owed to plaintiffs.

Plaintiffs' Memorandum at 30 (emphasis in original). The union's duty of fair representation, which arises from sections 8(b) and 9(a) of the National Labor Relations Act, 29 U.S.C. §§ 158(b), 159(a), is breached "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). The duty is "derived from a union's statutory right to be the exclusive representative of the members of a designated unit." *Abrams v. Carrier Corp.*, 434 F.2d 1234, 1251 (2d Cir.1970). The ordinary case under the doctrine is one in which a plaintiff contends that his union has failed to represent him adequately in processing a grievance against the employer or contesting a discharge. *E.g.*, *Vaca, supra*.

As authority for the proposition that the union's conduct in the instant case violated its duty of fair representation, plaintiffs rely on the decision of the Ninth Circuit Court of Appeals in *Seay v. McDonnell Douglas Corp.*, 427 F.2d 996 (1970), *appeal after remand*, 533 F.2d 1126 (1976). The court in *Seay* held that plaintiffs who contested the expenditure for political purposes of fees collected pursuant to an agency shop clause had stated a claim for breach of the union's duty of fair representation. The court read into the collective bargaining agreement a requirement that agency fees be spent only on costs attributable to the bargaining unit. The court

found this requirement implied in the "statute under the terms of which the collective bargaining agreement, with its agency fee provision, was entered into in [the] case." 427 F.2d at 1000. But although the agreement in *Seay* was governed by the National Labor Relations Act, the court based its holding on the Railway Labor Act cases discussed *supra* at pp. 1248–1249.

Defendants contend that *Seay* was wrongly decided, since the court in *Seay* ignored the differences between section 2, Eleventh of the Railway Labor Act and section 8(a)(3) of the NLRA. The court in *Seay* assumed that the two statutes were "for all purposes here, the same," 427 F.2d at 1003, and that if the Railway Labor Act forbids the expenditure of agency fees for political purposes, the National Labor Relations Act must also forbid such expenditures.[9] The court also assumed, without elaboration of its rationale, that expenditures in violation of this rule would breach the duty of fair representation.

■ In my judgment, the court in *Kolinske* took a more persuasive approach to the claim that the conduct in issue here constitutes a breach of the union's duty of fair representation. The court stated:

> A union's duty of fair representation arises out of the exclusive representational status granted a union by section 9(a) of the NLRA, 29 U.S.C. § 159(a) (1976). *See Baker v. Newspaper & Graphic Communications Union Local 6*, 628 F.2d 156, 165 (D.C.Cir.1980). This section has been interpreted to mean that the union must "serve the interests of all [employees] without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967) (citing *Humphrey v. Moore*, 375 U.S. 335, 342, 84 S.Ct. 363, 367, 11 L.Ed.2d 370 (1964))....

... Arising as it does out of a union's privilege under section 9(a) of the NLRA to serve as the employee's exclusive representative, the duty of fair representation is co-extensive only with the power of exclusive representation. As we have earlier noted, "a union ... can be held to represent employees *unfairly* only in regard to those matters as to which it represents them *at all*—namely, 'rates of pay, wages, hours ..., or other conditions of employment.'" *International Brotherhood of Teamsters, Local No. 310 v. NLRB*, 587 F.2d 1176, 1183 (D.C. Cir.1978) (quoting 29 U.S.C. § 159(a) (1970) (emphasis in original) (footnote omitted); *see also Miranda Fuel Co., Inc.*, 140 N.L.R.B. 181, 185 (1962) (duty of fair representation extends to matters affecting employment). *In other words, the duty of fair representation extends only to matters involving an employee's dealings with his employer and ordinarily does not affect an employee's relationship with the union structure. Bass v. International Brotherhood of Boilermakers*, 630 F.2d 1058 (5th Cir. 1980).

712 F.2d at 481 (emphasis added).

In the instant case, the controversy over the union's use of dues and fees is purely an internal union matter. There is no claim that the union has represented these plaintiffs inadequately or unfairly in any dealings with the employer. Indeed, the Supreme Court has recently indicated that in order to prevail on a claim alleging breach of the union's duty of fair representation, the aggrieved employee must show both that the employer breached the collective bargaining agreement and that the union breached its duty to assist the plaintiff in seeking a remedy for the employer's breach. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983). Although plaintiffs have made the employer a defendant in this case, they

---

**9.** The Supreme Court has warned that "[e]ven rough analogies [between the Railway Labor Act and the National Labor Relations Act] must be drawn circumspectly, with due regard for the many differences between the statutory schemes." *Railroad Trainmen v. Terminal Co.*, 394 U.S. 369, 383, 89 S.Ct. 1109, 1118, 22 L.Ed.2d 344 (1969) (footnote omitted).

**1252**

have alleged no breach of contract by the employer. I conclude that the plaintiffs have failed to show a breach by the union of its duty of fair representation.[10]

### C. The Adequacy of the Union's Rebate Scheme

Plaintiffs have devoted a large portion of their memorandum to a contention that the union's rebate procedure for members who object to the expenditure of dues and fees for political purposes is inadequate. Were the adequacy of the rebate scheme a material issue in this case, summary judgment for either party would have to be denied, since the operation of the procedure would raise contested questions of fact. Having decided, however, that plaintiffs' constitutional claims must fail for lack of government action, and that the claim for breach of the duty of fair representation must fail because the expenditure of dues and fees is a purely internal union matter, I need not pass on the adequacy of the rebate scheme.

### V. General Dynamics Corporation's Motion to Dismiss

In view of the disposition of the cross-motions for summary judgment discussed above, the employer's motion to dismiss for failure to establish governmental action in the negotiation or execution by General Dynamics of the collective bargaining agreement is granted.

### VI. Conclusion

I am not unmindful that the central allegation of this case—that plaintiffs are forced, on pain of discharge, to support political speech and activities with which they disagree—is a serious one. Forced political speech is repugnant to the ideas of individualism and freedom of expression which underlie the first amendment to the Constitution. I am satisfied, however, that

the legal theories on which plaintiffs rely are not supported by the applicable statutes and caselaw. Plaintiffs must seek relief in other fora, such as the Congress, the NLRB, and within the union itself.

For the foregoing reasons, the action is dismissed against defendant General Dynamics Corporation, and the joint motion of the union defendants for summary judgment is granted.

SO ORDERED.

---

**10.** Were the conduct at issue in this case considered to come within the duty of fair representation doctrine, it is difficult to see what expenditure decisions by the union would *not* be subject to judicial review under the doctrine. In my view, it would be a mistake to give the duty of fair representation, which is a doctrine implied by the NLRB and the courts from the statute, such a broad reading. When Congress sought to regulate the internal affairs of unions, it had no difficulty in enacting a statute designed specifically to do so. *See* the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.* (1982).