Robert PRICE, et al.

v.

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), et al.

Civ. No. H–84–1221 (PCD).

United States District Court, D. Connecticut.

June 1, 1989.

Edward T. Lynch, Jr., Dennis G. Ciccarillo, Michalik & Lynch, New Britain, Conn., Michael Avakian, North Springfield, Va., for plaintiffs.

Glenn E. Coe, Perakos & Coe, New Britain, Conn., Arthur G. Telegen, Foley, Hoag & Eliot, Boston, Mass., Michael B. Nicholson, Daniel W. Sherrick, Detroit, Mich., Robert A. Goldstein, Kliegman, Goldstein, Israel & Cooper, New York City, Barbara J. Collins, and Gregg D. Adler, Kestell, Pogue & Gould, Hartford, Conn., for defendants.

## RULING ON PENDING MOTIONS

DORSEY, District Judge.

*Background*

This action is on remand for further consideration in light of *Communications Workers of America v. Beck*, 487 U.S. ——, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988). Plaintiffs are 252 present or former employees of General Dynamics Corporation ("General Dynamics"), Electric Boat Division, in Groton, Connecticut, who were at various times members of a collective bargaining unit represented by defendants, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") and Marine Draftsmen's Association, UAW Local 571 ("UAW Local 571") (hereinafter collectively the "UAW" or "Union"). Plaintiffs, as non-Union member employees,[1] brought suit in 1984 challenging the "agency shop"[2] requirement that they pay full Union dues and initiation fees. Plaintiffs claimed that such arrangements violated their first and fifth amendment rights and the Union's duty of fair representation, to the extent that such monies were expended by the Union on non-collective bargaining activities such as lobbying, political contributions, and organizing efforts.

Judge Blumenfeld denied plaintiffs' initial application for a preliminary injunction, *see* Memorandum and Order (Dec. 27, 1984), and subsequently granted defendants' motion for summary judgment. 621 F.Supp. 1243 (D.Conn.1985). Judge Blumenfeld found that plaintiffs' constitutional claims were unfounded for lack of state action and that the Union's duty of fair representation was not implicated in this employee-union dispute. *Id.* at 1250–51. The Court of Appeals for the Second Circuit affirmed *in toto*. 795 F.2d 1128 (2d Cir.1986).

Concurrently, the Court of Appeals for the Fourth Circuit, after hearing the identical issue and rehearing it en banc, concluded (6–4) that the union's duty of fair representation was implicated, but remained split on the constitutional question. *Beck v. Communication Workers of America*, 800 F.2d 1280 (4th Cir.1986). Five of the

---

1. As of this writing, half of the 252 plaintiffs— 126 in all—had either quit or retired or transferred to employment with General Dynamics outside of the relevant bargaining unit. Of the 126 plaintiffs still in the bargaining unit, 15 are now members of the UAW. The remaining 111 plaintiffs are not UAW members.

2. [T]he term "agency shop" applies to an arrangement under which all employees are required as a condition of employment to pay dues to the union and pay the union's initiation fee, but they need not actually become union members.
*NLRB v. General Motors Corp.*, 373 U.S. 734, 736, 83 S.Ct. 1453, 1456, 10 L.Ed.2d 670 (1963).

ten judges of the Fourth Circuit panel felt there was insufficient state involvement to support the constitutional claims, two judges felt constitutional challenges were valid, and three judges declined to reach the constitutional issue, having found the plaintiffs' statutory claims sufficient to confer jurisdiction and, therefore, provide a basis for relief. *Id.*

Given this conflict between the circuits, the Supreme Court granted certiorari, 482 U.S. 904, 107 S.Ct. 2480, 96 L.Ed.2d 372 (1987), "to resolve the important question concerning the validity of such [agency shop] agreements." *Beck,* 108 S.Ct. at 2646. The Supreme Court found that the Union's duty of fair representation was at issue and that agency shop agreements were limited to exacting from non-union member employees "only those fees and dues necessary to 'performing the duties of an exclusive representative of the employees in dealing with the employer on labor management issues.'" *Id.* at 2657, quoting *Ellis v. Brotherhood of Railway Clerks,* 466 U.S. 435, 448, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984). Thus, bargaining for and entering into agreements which call for payments "to support union activities beyond those germane to collective bargaining, contract administration, and grievance adjustment" were found to be violative of the Union's duty of fair representation.[3] *Id.* 108 S.Ct. at 2648.

The Court vacated the Second Circuit's judgment in this case and remanded it for further consideration in light of *Beck.* —— U.S. ——, 108 S.Ct. 2890, 101 L.Ed.2d 924 (1988). The Second Circuit in turn vacated and remanded here.

*Pending Motions*

Upon remand, plaintiffs submitted a proposed order for preliminary injunctive relief,[4] to which defendants responded. The Union defendants, in turn, moved to dismiss plaintiffs' constitutional claims for

lack of state action and for summary judgment on plaintiffs' fair representation claim. General Dynamics also moved to dismiss for lack of jurisdiction and/or failure to state a claim. These motions are resolved below.

A. *Preliminary Injunction*

■ Plaintiffs have moved to enjoin defendants from exacting monies or fees in excess of those necessary for collective bargaining, contract administration and grievance adjustment, and to prevent defendants from discharging any plaintiff who refuses at this time to pay such fees. Plaintiffs assert that until adequate procedures determine their correct pro-rata share of Union collective bargaining expenses, any fee collected will irreparably impinge upon their first amendment rights and violate the Union's duty of fair representation.

It is axiomatic that "injunctive relief clearly calls for a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons,* 596 F.2d 70, 72 (2d Cir.1979). Plaintiffs fail to meet either of these requirements and their motion for preliminary injunction is, therefore, denied.

Plaintiffs' allegations of irreparable harm are inextricably tied to their first amendment claims. There is no question that "loss of First Amendment freedoms, for even minimal periods of time, ... constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976). *Accord Katz v. McAulay,* 438 F.2d 1058, 1060 n. 3 (2d Cir.1971), *cert. denied,* 405 U.S. 933, 92

---

3. The Supreme Court declined to rule on the constitutional "state action" issue. *Beck,* 108 S.Ct. at 2656-57.

4. After the Supreme Court remanded this case to the Second Circuit, but before the Second Circuit could remand it to this court, plaintiffs moved for a preliminary injunction in the Sec-

ond Circuit, which referred it here. Upon receiving the referral, this court ordered plaintiffs to submit their proposed order. Order for Submissions (Jan. 3, 1989). The proposed order is, therefore, treated as a motion for preliminary injunction.

S.Ct. 930, 30 L.Ed.2d 809 (1972) ("[I]rreparable harm is manifest where it is alleged that First Amendment rights have been chilled as the result of governmental action."). However, absent governmental involvement sufficient to implicate first amendment concerns, it is equally clear that mere monetary losses do not constitute irreparable injury. *Jackson Dairy, Inc.*, 596 F.2d at 72. Thus, plaintiffs' claimed injuries, which constitute simple overcharging by the Union coupled with an overlay of alleged first amendment infringements, is only irreparable to the extent that first amendment rights are involved.[5] That involvement in turn hinges upon the existence of state action. *Hudgens v. NLRB*, 424 U.S. 507, 513, 96 S.Ct. 1029, 1033, 47 L.Ed.2d 196 (1976).

### 1. *State Action*

Both Judge Blumenfeld, 621 F.Supp. 1243, and the Second Circuit, 795 F.2d 1128, have previously determined, in well-crafted and thorough opinions, that state action is not implicated in the agency shop agreements at issue here. Similarly, five of the seven judges of the Fourth Circuit who considered the issue reached the same conclusion, *Beck*, 800 F.2d at 1282, as did

the District Court for the District of Columbia in a post-*Beck* opinion. *Abrams v. Communication Workers of America*, 702 F.Supp. 920 (D.D.C.1988). It is true, as plaintiffs argue, that the Second Circuit's controlling opinion was vacated after the ruling in *Beck;* however, the "state action" reasoning of the Second Circuit opinion was not altered or disturbed.

In *Beck*, the Supreme Court explicitly declined to rule on the state action issue, *id.* 108 S.Ct. at 2656,[6] resolving the case instead on purely statutory grounds and reversing the Second Circuit on its interpretation of Section 8(a)(3) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(3). Consequently, there has been no modification of the Second Circuit's determination that the agency shop agreement here is "a product of private negotiations and [is] not attributable to the government." 795 F.2d at 1133. That conclusion and the analysis used to reach it are found to be sound and persuasive. Rather than reiterate that analysis, that part of the Second Circuit's opinion which discusses the lack of state action, 795 F.2d at 1132–33, is incorporated herein. Plaintiffs' constitutional claims must, therefore, fail for want of governmental involvement.[7]

**5.** Plaintiffs also argue that they will suffer irreparable harm through discharge if they refuse to pay Union assessed fees, which they claim are excessive. However, plaintiffs can avoid discharge by temporarily suffering the readily recompensable loss of modest dues monies until their claims are resolved, when improper payments will be restored. In the absence of first amendment rights, it is difficult to comprehend why a plaintiff would challenge the Union assessment in such a way as to lose all income (i.e., refuse to pay and suffer discharge) rather than by paying the modest dues and seeking reimbursement of any overcharges, with interest. Furthermore, it is doubtful whether plaintiffs would be within their rights to refuse all payments, given this court's conclusion that the Union's procedures for determining the appropriate assessment do not violate the Union's duty of fair representation. *See infra.* In any event, "the temporary loss of income [resulting from discharge], ultimately to be recovered, does not usually constitute irreparable injury." *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974). " 'The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily

against a claim of irreparable harm.' " *Id.,* quoting *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C.Cir.1958). Here, any harm resulting from improper discharge would clearly be monetarily compensable, precluding injunctive relief.

**6.** Interestingly, however, in declining to comment on the constitutional issue, the Court cited only two precedents, both of which involved union activities which were found *not* to implicate governmental action; *Steelworkers v. Sadlowski,* 457 U.S. 102, 121 n. 16, 102 S.Ct. 2339, 2350 n. 16, 72 L.Ed.2d 707 (1982) (union's decision to adopt an internal rule governing its elections does not involve state action); *Steelworkers v. Weber,* 443 U.S. 193, 200, 99 S.Ct. 2721, 2725, 61 L.Ed.2d 480 (1979) (negotiation of collective bargaining agreement's affirmative action plan does not involve state action). These citations would appear to lend the Court's imprimatur to the conclusion that state action is not implicated in this case.

**7.** Briefly, the rationale for lack of state action is as follows: State action requires (1) exercise of a right or privilege created by the government; (2) by a state actor. *Lugar v. Edmondson Oil*

Accordingly, plaintiffs fail to sustain their burden of demonstrating irreparable injury and their motion for preliminary injunction must be denied.[8]

### B.  Union's Motion to Dismiss

The Union's motion to dismiss plaintiffs' first and fifth amendment claims is granted, given the absence of state action to support those claims.  Counts One, Two and Three of plaintiffs' amended complaint are, therefore, dismissed.

### C.  Union's Motion for Summary Judgment

■ Defendant Union has moved for summary judgment on plaintiffs' fourth count, which alleges that the Union has violated its duty of fair representation by demanding "the *full* amount of fees and/or dues" charged to Union members, in excess of the amount "reasonably necessary and germane to collective bargaining, contract administration and grievance adjustment." Amended Complaint, ¶ 21.  The Union argues that, since *Beck*— which established the validity of this particular claim—it has reduced the agency fees charged non-Union members to 85.4% of the full fees (allegedly representing the percentage of Union dues attributable to collective bargaining activities) and instituted supplemental procedures by which objecting employees can impartially challenge the Union's determination of this percentage.[9]  Plaintiffs' opposition criticizes both the accuracy of the

Union's accounting methods and the adequacy of the objection procedures.

The Union's duty of fair representation arises from Sections 8(b) and 9(a) of the NLRA, 29 U.S.C. §§ 158(b), 159(a); although it is a "judicially implied duty," *Beck*, 108 S.Ct. at 2647, it "derive[s] from a union's statutory right to be the exclusive representative of the members of a designated unit." *Abrams v. Carrier Corp.*, 434 F.2d 1234, 1251 (2d Cir.1970), *cert. denied, Steelworkers v. Abrams*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971). Under the duty, "a union must represent fairly the interests of all bargaining-unit members during the negotiation, administration and enforcement of collective-bargaining agreements." *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 47, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979).  It is well established that the duty is breached "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967).

Plaintiffs' claims of unfair representation cannot presently be sustained.  Since *Beck*, the Union has not acted arbitrarily, discriminatorily or in bad faith.  To the contrary, the Union has determined, at least preliminarily, the percentage of costs attributable to collective bargaining activities (85.4%) and adjusted plaintiffs' assessed fees accordingly.  The Union has

*Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). Although the language at issue here, Section 8(a)(3) of the NLRA (defining unfair labor practices), is nearly identical to the language of Section 2, Eleventh of the Railway Labor Act ("RLA"), and Section 2, Eleventh has been found to implicate state action, *Railway Employees' Dept. v. Hanson*, 351 U.S. 225, 232, 76 S.Ct. 714, 718, 100 L.Ed. 1112 (1956), the finding of state action under Section 2, Eleventh rested squarely on the fact that the RLA expressly preempts contrary state law, *id.*, thereby providing "the source of the power and authority by which any private rights are lost or sacrificed." *Id.*  By contrast, the NLRA expressly allows for contrary state law, *see* 29 U.S.C. § 164(b), and, therefore, does not authorize or provide for the deprivation of any right or privilege created by the government.  In short, the lack of preemption under the NLRA negates a

finding of government infringement of constitutional rights.  Furthermore, the Union and employer here cannot be said to be state actors. *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Sadlowski*, 457 U.S. at 121, n. 16, 102 S.Ct. at 2350, n. 16; *Weber*, 443 U.S. at 200, 99 S.Ct. at 2725.

8.  Similarly, given the conclusion, *infra,* that the Union is entitled to summary judgment on its duty of fair representation claim, and that the claims against General Dynamics should be dismissed, plaintiffs are not "likely to succeed on the merits," an additional basis for denying the preliminary injunction.

9.  These procedures are memorialized in a letter from the Union to plaintiffs' counsel, dated October 21, 1988 (attached as an Appendix).

also placed a sum representing the entire projected 85.4% reduced payments of all non-Union plaintiffs for the twelve-month period following *Beck* in an interest bearing escrow account. These monies will not be used by the Union until an independent arbitrator has reviewed the Union's percentage determination.

The Union's new objection procedures, which closely track guidelines established in a recent internal NLRB memorandum (Memorandum GC 88–14, Guidelines Concerning *CWA v. Beck*, NLRB Office of the General Counsel, Nov. 15, 1988, Exhibit B to Plaintiffs' Reply to Defendants' Memorandum in Opposition to Motion for Preliminary Injunction) can be outlined as follows:

### I. *Report of Expenditures*

On May 15 of each year, following the year-end audit, the Union will issue a Report of Expenditures Incurred in Providing Collective Bargaining Services (the "Report") which will indicate (1) the percentage of funds spent in the last accounting year for representational (chargeable) and non-representational (non-chargeable) activities; and (2) the major categories of expenditures and their allocation by the Union as either chargeable or non-chargeable.

This Report shall be mailed to all employees who have objected to payment of these fees within the past twelve months, and all subsequent objectors.

### II. *Challenges*

Within forty-five days of issuance of the Report any non-Union employee can challenge the Report and the chargeable percentage by informing the Union in writing. Such objections must be renewed annually.[10]

### III. *Escrow Pending Resolution*

Pending resolution of the objectors' challenges, the Union will place in an interest bearing escrow account a sum equal to each objector's projected payment for the subsequent twelve-month period to which the new percentage applies.

### IV. *Resolution by Binding Arbitration*

All challenges to the chargeable percentage will be referred to the American Arbitration Association ("AAA") for resolution pursuant to its "Rules for Impartial Determination of Union Fees." Under those rules, AAA will select an arbitrator to hear and determine the validity of the challenges. The Union will bear the burden of justifying whatever fees are being disputed. The arbitrator's binding decision is to be issued expeditiously—within sixty days of consolidation of the challenges for hearing.

Plaintiffs' objections to these procedures are based primarily upon cases which impose constitutional requirements on Union fee collection practices.[11] *See, e.g., Chicago Teachers Union*, 475 U.S. 292, 106 S.Ct. 1066; *Tierney v. City of Toledo*, 824 F.2d 1497 (6th Cir.1987); *Damiano v. Matish*, 830 F.2d 1363 (6th Cir.1987); *Lehnert v. Ferris Faculty Ass'n*, 643 F.Supp. 1306 (W.D.Mich.1986). However, given the lack of state action, this case is not governed by constitutional standards. Rather, the Union's conduct is to be reviewed simply to determine if it is arbitrary, discriminatory or in bad faith. *Sipes*, 386 U.S. at 190, 87 S.Ct. at 916.

Plaintiffs object (1) that the Union's annual expenditure Report is not sufficiently

---

**10.** [D]issent is not to be presumed—it must affirmatively be made known to the Union by the dissenting employee. The Union receiving money exacted from an employee under a Union-shop agreement should not in fairness be subjected to sanctions in favor of an employee who makes no complaint of the use of his money for such activities.
*International Ass'n of Machinists v. Street*, 367 U.S. 740, 774, 81 S.Ct. 1784, 1802, 6 L.Ed.2d 1141 (1961).

**11.** These constitutional requirements include "an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow of the amounts reasonably in dispute while such challenges are pending." *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 310, 106 S.Ct. 1066, 1077, 89 L.Ed.2d 232 (1986). Notably, the Union's procedures approach these standards to a significant degree.

detailed to provide for an informed objection; (2) that the determination of chargeable and non-chargeable Union expenditures should be made by an independent auditor (rather than by the Union); (3) that the "local presumption" [12] assumed by the Union in calculating the chargeable percentage is inaccurate and unsupported; and (4) that the requirement of binding arbitration is unconstitutional.

### (1) *Detail of the Report*

Plaintiffs' argument that the Report is insufficiently detailed is based upon *Hudson,* where the Court required out of "concern for the First Amendment rights at stake, ... that the potential objectors be given sufficient information to gauge the propriety of the union's fee." 475 U.S. at 306, 106 S.Ct. at 1075. However, *Hudson's* first amendment principles do not control the instant case. Viewing the Union expenditure Report under the *Sipes* standard, it plainly is not arbitrary, discriminatory or in bad faith and, notably, plaintiffs have not alleged it to be so. Accordingly, the court finds the Report adequate for purposes of providing potential objectors an informed basis on which to object.

### (2) *Auditing of Chargeable and Non–Chargeable Expenditures*

Plaintiffs' argument that an independent auditor should evaluate and determine chargeable and non-chargeable expenditures is also based upon plaintiffs' interpretation of first amendment requirements, as imposed in *Hudson, Tierney,* and *Damiano.* Even if this case were governed by the more stringent constitutional standards, plaintiffs' argument would fail. As the Second Circuit has stated, in a nearly identical context with a nearly identical union procedure:

> *Hudson's* auditor requirement is only designed to ensure that the usual function of an auditor is fulfilled. That usual function is to ensure that the expenditures which the union claims it made for

certain expenses were actually made for those expenses. The union's plan satisfies this requirement. The [plaintiffs'] interpretation of *Hudson's* auditing requirement is overly broad because it seeks to have the auditor function both as an auditor in the traditional sense and as the independent decisionmaker as to chargeable expenses.

*Andrews v. Education Ass'n of Cheshire,* 829 F.2d 335, 340 (2d Cir.1987). Significantly, *Andrews* involved first amendment rights and thus was judged under a stricter standard than that which is involved here. Accordingly, the Union's auditing procedures cannot be said to violate plaintiffs' rights.

### (3) *Local Presumption*

Plaintiffs assert that the Union's use of the local presumption to determine the chargeable percentage is unsupported and, therefore, cannot pass constitutional muster. Contrary to plaintiffs' claims, however, there are no fundamental constitutional rights at issue here, so the Union's procedure need not "withstand strict scrutiny." Plaintiffs' Opposition to Defendants' Motions to Dismiss and or for Summary Judgment at 8. Even under a constitutional analysis, however, at least one court in this district has previously approved just the sort of local presumption presented. "[T]he Supreme Court [has] repeated[ly] recogni[zed] that 'there are practical reasons why "[a]bsolute precision" in the calculation of the charge to nonmembers cannot be "expected or required." ' " *Andrews,* 653 F.Supp. 1373, 1378 (D.Conn. 1987), quoting *Hudson,* 475 U.S. at 307· n. 18, 106 S.Ct. at 1076 n. 18. Accordingly, "defendants' use of the evidentiary presumption ... satisfies constitutional requirements, even if in rare instances there may arise situations in which this presumption is incorrect." *Id.*

In the instant case, the Union's use of the presumption is clearly not arbitrary, discriminatory or in bad faith, especially considering the fact that plaintiffs are not

---

**12.** The Union has assumed for practical accounting purposes that the allocation between chargeable and non-chargeable expenditures for the International Union (UAW) is equivalent to the allocation for each of its 1189 Local unions. This is the so-called local presumption.

required to blindly accept this presumption, but may challenge it in arbitration together with any other challenges to the Union's chargeable fee determination. The Union will bear the burden of justifying the presumption at such a proceeding. The presumption is clearly within the "wide range of reasonableness ... allowed a statutory bargaining representative in serving the unit it represents." *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337–38, 73 S.Ct. 681, 685–86, 97 L.Ed. 1048 (1953). Accordingly, the Union's use of the local presumption is proper.

### (4) *Binding Arbitration*

Plaintiffs' argument that the Union's procedure calling for binding arbitration is unconstitutional does not require discussion; it is without merit.

The Union's procedures for determining the correct chargeable fee for non-Union employees, instituted in the aftermath of *Beck*, clearly satisfy the Union's duty of fair representation. Accordingly, the Union is entitled to summary judgment on plaintiffs' fourth count, at least to the extent that it seeks redress for post-*Beck* violations. An issue remains as to pre-*Beck* violations, however, and the potentially retroactive reach of *Beck*. The Union claims that *Beck* cannot be applied retroactively; plaintiffs have not discussed this issue. In order to address the issue fairly, the parties are ordered to submit briefs, on or before June 19, 1989, discussing the retroactive effect of *Beck* and the appropriateness of a remedy for pre-*Beck* violations.

### D. *General Dynamics' Motion to Dismiss*

It is well established that an employer can be held responsible for violating the NLRA when it "participates" with a union in arbitrary or unfair activity. *Sipes*, 386 U.S. at 178, 87 S.Ct. at 910. However, given the determination above that there has been no unfairness on the part of the Union, at least post-*Beck*, the employer's motion to dismiss shall be granted as to any post-*Beck* claim. Resolution of plaintiffs' potential pre-*Beck* claims against

General Dynamics must await this court's determination of the retroactive effect of *Beck*.

### *Conclusion*

For the foregoing reasons, plaintiffs' motion for a preliminary injunction is denied, defendant Union's motion to dismiss is granted, defendant Union's motion for summary judgment is granted as to any alleged post-*Beck* violations, and defendant General Dynamics' motion to dismiss is granted as to any alleged post-*Beck* violations.

SO ORDERED.

### APPENDIX

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA—UAW

October 21, 1988

Michael Avakian

Center on National Labor Policy

5211 Port Royal Road

Suite 400

No. Springfield, Virginia 22151

Re: *Price v. UAW*

(Civil No. H84–1221 (D.Conn.) (2d Cir. No. 85–7408))

Dear Mr. Avakian:

This letter is to inform you, and through you your non-UAW member clients who are plaintiffs in the above-referenced matter, that the UAW has determined to adopt the procedures described herein regarding objections by nonmembers of the UAW covered by union security agreements negotiated under the National Labor Relations Act ("NLRA") to expenditures not related to collective bargaining and related union activities. UAW Local 571's records indicate that of your 252 clients, 123 have left the bargaining unit, 10 have joined the UAW, and at least one, Mr. Price, is on leave of absence.

Part of UAW's procedure is that nonmembers of the UAW covered by NLRA union security agreements negotiated under the NLRA are required to notify the

UAW in writing of their objection by writing to the Agency Fee Payer Objection Administration—Private Sector, International Union, UAW 8000 E. Jefferson Avenue, Detroit, Michigan 48214. Objections must be renewed each year. (This procedure is separate from the procedure set out in Article 16, Section 7 of the UAW Constitution. Unlike the procedures described herein, which are available only to objecting non-members covered by NLRA union security agreements, the Article 16, Section 7 procedure is available to all your clients, including those who have chosen to become members of the UAW.)

However, in light of your clients' participation in the above-referenced case, the UAW has decided, for this case only, to treat each of your non-member clients as objectors, under the procedure outlined herein, without requiring them to submit individual objections. The only exception is that this treatment would not apply to the ten of your clients who have joined the UAW since commencement of this case in 1984. In order for your non-member clients to renew their objections and continue them in force without interruption they should notify the UAW at the above address within thirty days prior to October 21, 1989.

We are notifying your non-member clients' employer to immediately reduce the amount of fees paid by your clients pursuant to any check-off authorization to 85.4 per cent of the dues paid by union members in your bargaining unit. If your non-member clients do not pay by check-off, they should begin paying this same reduced percentage of fees directly to the Union. A copy of our letter to the employer is enclosed.

This percentage referred to above (the "Chargeable Amount") is determined pursuant to the enclosed Report of Expenditures Incurred In Providing Collective Bargaining Related Services. The Report sets forth the UAW's allocation of various major categories of expenditures as chargeable or non-chargeable. The amounts listed in the Report as having been spent in the major categories of expenditures set forth in the Report, but not the above-referenced allocation, are taken from the UAW's financial statements for Fiscal Year 1987 (calendar year 1987), which have been audited by Clarence H. Johnson Co., Certified Public Accountants. The allocation of categories of UAW expenditures into chargeable and non-chargeable components was done by the UAW.

A new Report is to be issued May 15 of each year, following completion of the next such fiscal year-end audit, and the amount chargeable to objecting non-members will be redetermined at that time. It would be helpful if you could provide the UAW with the current addresses of your non-member clients who are currently employed in the bargaining unit. This new Report will be mailed to your non-member clients who continue to be employed in the UAW–Electric Boat bargaining unit at the time the new Report is issued.

Any challenges to the calculations in the Report or any challenge claiming that the Report does not properly determine what portion of UAW's expenditures were expended on matters unrelated to collective bargaining must be mailed to "Agency Fee Payer Objection Administration—Private Sector, International Union, UAW, 8000 East Jefferson, Detroit, Michigan 48214." Such challenges must be received between the May 15 issuance of the Report and the 30th day of June following the issuance of the Report. Since this period of time has passed, your clients' first opportunity to challenge a Report determination will be during the above-referenced period following the issuance of the next Report, (i.e., May 15–June 30, 1989).

Any such challenges to a Report as described above will be referred to an impartial decisionmaker. Until further notice, all such appeals shall be referred by the UAW to the American Arbitration Association ("AAA"), pursuant to its "Rules for Impartial Determination of Union Fees effective June 1, 1986." (A copy is attached). The UAW will have the authority to have any or all such challenges consolidated before the impartial decisionmaker selected by the

AAA. The impartial decisionmaker shall issue his or her determination as to the challenges within 60 days of the filing of the last challenge so consolidated. The impartial decisionmaker's jurisdiction shall be limited to determining whether the Chargeable Amount determined by the UAW with respect to the challenges is in accord with the standard set forth in the previous paragraph of this letter. The determination of the impartial decisionmaker shall be final and binding.

If your non-member clients file a timely challenge to a Report pursuant to the above-described procedure, the UAW will immediately deposit an amount of money equal to the amount to be charged to your non-member clients during the next twelve month period in an interest-bearing escrow account maintained by Comerica Bank. Money so deposited will remain in the escrow account and will not be made available to the UAW for any use until distribution in accordance with the determination of the impartial arbitrator.

Finally, to avoid litigation and given the fact that your clients have had the above-referenced civil action pending for some time, the UAW will take the additional steps set out below in this paragraph, without precedent for the future and in this case only. First, the UAW will escrow all agency fees paid by your non-member clients for the period from July 1, 1988 to June 30, 1989, and will refund to your clients any fees already paid in excess of the 85.4 per cent Chargeable Amount for that period. Second, the results of any arbitration decision which any of your non-member clients cause to be issued, by timely filing a challenge to the UAW's next such determination stated in its next Report, will be applied to these escrowed agency fees for the period from July 1, 1988 to June 30, 1989 for all of your non-member clients who have filed a challenge to the next Report determination.

Counsel for the UAW will contact you to attempt to resolve any claims made by your clients for the period prior to July 1, 1988.

Very truly yours,
Agency Fee Payer Objection
Administration–Private Sector
International Union, UAW
8000 East Jefferson
Detroit, Michigan 48214