Robert PRICE, all others similarly situated; Deloris Blanco, Donald Raffo, James Q. Ryley, Charles P. Crandall, III, et al., Plaintiffs–Appellants,

v.

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA; Marine Draftsmen Association, Local 571, UAW, AFL–CIO and Electric Boat Division, General Dynamics Corporation, Defendants–Appellees.

No. 701, Docket 90–7652.

United States Court of Appeals, Second Circuit.

Argued Nov. 30, 1990.

Decided March 4, 1991.

---

**3.** Similarly the Consent Decree requires the City "to provide the [identified] sites ... for the location of ... public housing."

Jordan Rossen, and Michael B. Nicholson, Detroit, Mich. (Intern. Union, UAW), and Gregg D. Adler, Hartford, Conn. (Gould, Livingston, Adler & Pulda), of counsel, for appellee Unions.

Michael E. Avakian, North Springfield, Va. (Center on National Labor Policy), of counsel, for plaintiffs-appellants.

Arthur G. Telegen, Boston, Mass. (Foley, Hoag & Eliot), of counsel, for appellee Electric Boat Div., General Dynamics Corp.

Before OAKES, Chief Judge, CARDAMONE, Circuit Judge, and SPRIZZO, District Judge.*

---

* The Honorable John E. Sprizzo, United States District Judge for the Southern District of New York, sitting by designation.

SPRIZZO, District Judge:

Appellants are present or former employees of General Dynamics Corporation, Electric Boat Division (hereinafter "GD"), and are or were members of a collective bargaining unit represented by appellee International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and Marine Draftsmen's Association, UAW Local 571 (hereinafter collectively the "UAW" or the "Union"). Although appellants are members of the bargaining unit, they are not members of the Union. Their allegations against their employer and the Union arise out of what is commonly referred to as a "union shop" clause contained in the collective bargaining agreement between the Union and the employer. The clause requires all bargaining unit employees, as a condition of employment, to pay initiation fees and dues in an amount equal to that paid by Union members.

Shortly after the collective bargaining agreement was entered into, appellants informed the Union that they wanted a percentage reduction in their dues and fees because they objected to the Union's use of those funds to support political and ideological causes unrelated to its role as collective bargaining representative. Appellants contended that the payment of the full amount of dues and fees violated their First Amendment speech and associational rights and their Fifth Amendment due process rights, and, in addition, constituted a breach of the Union's duty of fair representation. In response to appellants' request for a reduction in fees, the Union initially demanded that the full amount be paid and stated that it would seek their discharge upon nonpayment of said dues. Similarly, the employer notified appellants that they would be terminated for nonpayment. Rather than risk discharge, appellants paid their dues and fees in full. Appellants then filed suit in the United States District Court for the District of Connecticut seeking a declaratory judgment that the Union's use of those funds was constitutionally and legally improper as well as injunctive relief and damages.

The United States District Court for the District of Connecticut, M. Blumenfeld, Judge, denied appellants' request for a preliminary injunction, finding that they had failed to show either irreparable injury or likelihood of success on the merits. *See* Memorandum and Order (Dec. 27, 1984). Thereafter, both appellants and the Union cross-moved for summary judgment and GD moved to dismiss for failure to state a claim. The district court granted the Union's motion for summary judgment and GD's motion to dismiss and denied appellants' motion for summary judgment. *Price v. International Union, UAW*, 621 F.Supp. 1243 (D.Conn.1985). Judge Blumenfeld found that appellants' constitutional claims were unfounded because there was no government action in that neither the Union nor GD were government actors. *Id.* at 1246–50. The district court also held that the Union's duty of fair representation was not implicated in this employee-union dispute. *Id.* at 1250–52. This Court affirmed the judgment of the district court. *Price v. International Union, UAW*, 795 F.2d 1128 (2d Cir.1986).

Concurrently, the Court of Appeals for the Fourth Circuit, after hearing the identical issue and rehearing it en banc, concluded (6–4) that the Union's duty of fair representation was implicated, but were divided on the constitutional issues raised. *Beck v. Communications Workers of America*, 800 F.2d 1280 (4th Cir.1986). Five of the ten judges of the Fourth Circuit panel believed that there was insufficient state involvement to support the constitutional claims, two judges felt these claims were valid, and three judges declined to reach the constitutional issue, relying solely on appellants' statutory claims to provide relief. *Id.* at 1282. The Supreme Court then granted certiorari in *Beck*, 482 U.S. 904, 107 S.Ct. 2480, 96 L.Ed.2d 372 (1987), and affirmed the decision of that court. 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988).

The Supreme Court found that in cases of agency shop agreements the law permitted the Union to exact from non-Union member employees "only those fees and dues necessary to 'performing the duties of

an exclusive representative of the employees in dealing with the employer on labor-management issues.'" *Communications Workers of America v. Beck*, 487 U.S. 735, 762–63, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988) (quoting *Ellis v. Brotherhood of Railway Clerks*, 466 U.S. 435, 448, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984)). Thus, bargaining for and entering into agreements which call for payments to support Union activities beyond those germane to collective bargaining were found to be violative of the Union's duty of fair representation. *Id.* at 762–63, 108 S.Ct. at 2657. The Court, however, expressly declined to rule on the state action issue. *Id.* at 761, 108 S.Ct. at 2656. After the decision in *Beck*, the Supreme Court vacated this Court's judgment and remanded it for further consideration in light of *Beck*. 487 U.S. 1229, 108 S.Ct. 2890, 101 L.Ed.2d 924 (1988). This Court in turn remanded the matter to the district court for the same purpose.

On remand, the district court, Dorsey, J., denied appellants' resubmitted motion for a preliminary injunction and found that appellants could only demonstrate irreparable injury to the extent that their First Amendment rights were violated. The court further held that no First Amendment violation could be found in view of this Court's previous ruling which was unaffected by the Supreme Court's decision in *Beck*. *Price*, 722 F.Supp. 933, 935–37 (D.Conn. 1989). The district court therefore granted the Union's motion to dismiss the First and Fifth Amendment claims "given the absence of state action to support those claims." *Id.* at 937.

The district court also granted the Union's motion for summary judgment as to any alleged post-*Beck* violations because the Union had presented a rebate plan which clearly satisfied its duty of fair representation. *Id.* at 937–40.[1] Finally, the district court dismissed the compliant against GD as to any post-*Beck* claims finding that GD had not acted arbitrarily or unfairly. *Id.* at 940.[2]

## DISCUSSION

### A. The Constitutional Claims

■ The validity of appellants' First and Fifth Amendment claims, as this Court noted in the previous appeal, depends upon the existence of state action. *See Hudgens v. NLRB*, 424 U.S. 507, 513, 96 S.Ct. 1029, 1033, 47 L.Ed.2d 196 (1976); *Public Utilities Comm'n v. Pollack*, 343 U.S. 451, 461, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952).[3] Since the Supreme Court in *Beck* expressly declined to rule on the state action issue, that decision does not in any way modify this Court's prior determination that the union shop agreement at issue is "a product of private negotiations and [is] not attributable to the government." *Price*, 795 F.2d at 1133. Consequently, this Court adheres to its previous holding that appellants' constitutional claims must fail for want of governmental action.

Appellants assert that like Section 2, Eleventh of the Railway Labor Act, 45 U.S.C. § 152, Eleventh (1982) (hereinafter

---

1. Additionally, the district court determined in a subsequent opinion that *Beck* should be applied retroactively and that appellants had therefore stated a violation of the duty of fair representation against the Union prior to the implementation of the rebate plan. *See* Joint Appendix at 49–56 (hereinafter "J.A."). However, the conduct of the Union prior to their adoption of the objection procedures for non-members is not at issue on this appeal. *See* Brief of UAW Appellees at 1–2.

2. Also in a subsequent opinion, the district court dismissed any pre-*Beck* claims against GD finding that plaintiffs had alleged nothing from which to conclude that GD "participated" with the Union in arbitrary activity under *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842

(1967). *See* J.A. at 64. However, as with the case with respect to the Union, the only conduct by GD that is at issue in this appeal is conduct engaged in subsequent to the Supreme Court's decision in *Beck*. *See* Appellants' Brief in Reply at 6.

3. To find state action, "the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the state." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). Thus, state action requires: that (1) the deprivation must be caused by the exercise of some right or privilege created by the state; and (2) the party charged with the deprivation must be a state actor. *Id.* at 937, 102 S.Ct. at 2753.

"RLA"), Section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3) (1982) (hereinafter "NLRA"), establishes the requisite state action to support their constitutional claims. Appellants rely on a line of cases which found state action based upon nearly identical language under the RLA. *See Railway Employees' Dep't v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956); *International Assoc. of Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961); *Ellis v. Brotherhood of Railway Clerks*, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984). However, this Court previously held that the finding of state action under Section 2, Eleventh of the RLA rests squarely on the fact that the RLA expressly preempts contrary state law. *Price*, 795 F.2d at 1133. The NLRA, in contrast, contains no similar preemption of state law.

### B. *The Duty of Fair Representation*

■ A union's duty of fair representation is a judicially implied duty which arises from Sections 8(b) and 9(a) of the NLRA. *See* 29 U.S.C. §§ 158(b), 159(a) (1988). This duty requires a union to "represent fairly the interests of all bargaining-unit members during the negotiation, administration and enforcement of collective-bargaining agreements," *International Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 47, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979), and is breached "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967).

Appellants contend that under *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), and its progeny in the lower courts, the post-*Beck* procedures for establishing fees for non–Union members violate the Union's duty of fair representation. In *Hudson*, the Supreme Court announced certain "constitutional requirements" for the administration of public sector agency shop agreements. *Id.* at 310, 106 S.Ct. at 1077.[4] However, since the *Hudson* case involved public employees, state action was concededly involved and it was therefore necessary to impose heightened procedural safeguards "to insure that the government treads with sensitivity in areas freighted with First Amendment concerns." *Id.* at 303, n. 12, 106 S.Ct. at 1074, n. 12. Here, no state action is involved and there are thus no constitutional concerns which warrant the safeguards found necessary in *Hudson*. Instead, it is necessary only that the procedures employed not be arbitrary, discriminatory, or implemented in bad faith. *Sipes*, 386 U.S. at 190, 87 S.Ct. at 916.

The procedures implemented by the Union since *Beck* are more than adequate to meet that standard. The Union has reduced the fees charged nonmembers to 85.4% of the full fees which, according to the Union, represents the percentage of dues attributable to collective bargaining activities. Additionally, the Union has placed a sum representing the entire projected 85.4% reduced payments of all non–Union appellants into an interest bearing account, which monies cannot be used by the Union until an independent arbitrator has reviewed the Union's percentage determination referred to above. *See* Brief of UAW Appellees at 6–7.

---

**4.** The Union in *Hudson* determined that the proportionate share of dues to be assessed on nonmembers was 95%. A nonmember could contest this amount by submitting a written objection to the Union President. The objection would then be considered by the Union's Executive Committee and again by the Union's Executive Board on appeal. If the objector still wanted to protest the decision, the Union's President would select an arbitrator. If the objection was sustained at any stage, the remedy would be an immediate reduction in the amount of future deductions for all nonmembers and a rebate for the objector. "The Union's procedures did not survive 'First Amendment scrutiny.'" *Id.* at 304, 106 S.Ct. at 1074. The Court there found the Union's procedures to contain three constitutional defects. First, the possibility of a rebate failed to minimize the risk that non–Union employees' contributions might be temporarily used for impermissible purposes; *id.* at 305, 106 S.Ct. at 1075, second, the procedures failed to provide nonmembers with adequate information about the basis for the proportionate share; *id.* at 306, 106 S.Ct. at 1075, and third, the procedures did not provide for a reasonably prompt decision by an impartial decisionmaker. *Id.* at 307, 106 S.Ct. at 1076.

Moreover, the procedures now in place for resolving objections to the Union's determination cannot be fairly characterized as arbitrary. On May 15 of each year, after a year-end audit, the Union will issue a Report of Expenditures Incurred in Providing Collective Bargaining Related Services (the "Report") which will set forth the percentage of funds spent for chargeable and non-chargeable activities, as well as the major categories of expenditures and whether the Union denominates them as chargeable or non-chargeable to collective bargaining activities. *See* Brief of UAW Appellees at 5. This report will then be mailed to each nonmember who has filed an objection with the Union in the preceding twelve months and to those persons who subsequently file new objections. Within forty-five days of issuance of the Report, any non–Union employee can challenge the Report by informing the Union in writing. These objections must be renewed annually. *See* Brief for UAW Appellees at 5. All said challenges will then be resolved by reference of the dispute to the American Arbitration Association (the "AAA") pursuant to its Rules for Impartial Determination of Union Fees (the "Rules"). Under the Rules, the AAA will select an arbitrator to determine the validity of the challenge and the Union will bear the burden of justifying the fees that are in dispute. The arbitrator's decision must be issued within a sixty day period. *Id.* at 5–6.

Appellants contend the aforesaid procedures do not satisfy the Union's duty of fair representation because: (1) no independent auditor makes the determination as to whether Union expenditures listed in the Report are chargeable or non-chargeable; (2) the Union assumes for accounting purposes that the allocation between chargeable and non-chargeable expenditures for the UAW is equivalent to the allocation for each of its 1189 local unions (the so-called "local presumption"), an assumption which they allege is inaccurate and unsupported; and (3) the AAA procedures for the selection of an arbitrator are improper. We find no merit to appellants' contentions.[5]

With respect to the claim that the Union's report must be prepared and certified by an independent auditor we are not persuaded that the Union's duty of fair representation is breached by the failure to have an independent auditor review the Union's decision as to what is a chargeable and non-chargeable activity. Even in a constitutional context, as this Court stated in *Andrews v. Education Ass'n*, 829 F.2d 335 (2d Cir.1987), *Hudson* requires only that the usual function of an auditor be performed, *i.e.* to determine that the expenses claimed were in fact made. That function does not require that the auditor make a legal decision as to the appropriateness of the allocation of expenses to the chargeable and non-chargeable categories. *Andrews*, 829 F.2d at 340. In *Andrews*, which involved a challenge by nonmembers of a teachers union to proposed procedures for determining agency fees, where concededly constitutional claims were involved, the court held that the allocation of chargeable and non-chargeable expenses by the Union need not be audited. Moreover, where, as here, the Union's figures can be subsequently reviewed by an independent arbitrator, we perceive no basis to infer irrationality or bad faith in the use of the procedures employed by the Union.

Nor are we persuaded that the use of a so called "local presumption" breaches the Union's duty of good faith merely because, as appellants contend, the "local presumption" provides no information as to whether or not the local union made any bargaining unit related expenditures, and thus shifts the burden of proof from the Union to the

---

**5.** Appellants raised a fourth objection in the district court, apparently based on the *Hudson* case, that the Union's annual expenditure Report is not sufficiently detailed to provide for an informed objection. The district court addressed this claim and found that under the *Sipes* standard, the Report contains information sufficient to preclude a finding that its use was arbitrary, discriminatory or in bad faith. J.A. at 41. Appellants appear to have abandoned that claim on appeal in that it was not mentioned in their briefs or at Oral Argument. In any event, we agree with the district court that the information to be listed in the Report satisfied the *Sipes* standard.

objectors. Under the post–*Beck* procedures implemented by the Union, any objector need not accept the Union's use of the "local presumption" but may challenge it in arbitration. In the event of such a challenge the Union bears the burden of proving that the local union's expenditures are chargeable to the degree asserted by the Union. Brief of UAW Appellees at 34. Moreover, as the district court in *Andrews* noted in upholding the use of the "local presumption": the Supreme Court has repeatedly recognized that "there are practical reasons why 'absolute precision' in the calculation of the charge to non-members cannot be 'expected or required.'" *Andrews*, 653 F.Supp. at 1378 (quoting *Hudson*, 475 U.S. at 307 n. 18, 106 S.Ct. at 1076 n. 18). That conclusion was not challenged on appeal in *Andrews*, 829 F.2d at 338 n. 1.

Appellants' reliance on *Cramer v. Matish*, 924 F.2d 1057 (6th Cir.1990), is misplaced. That case, like *Hudson*, was concerned with constitutional safeguards, and has little, if any, applicability where, as here, the only issue is whether the use of a "local presumption" is reasonable and therefore cannot constitute arbitrary or bad faith conduct by the Union.

Appellants' contention that the use of the AAA rules to select an impartial arbitrator constitutes arbitrary conduct by the Union is also without merit. This Court has already held that the selection of the impartial decisionmaker through the AAA Rules meets the more stringent procedural requirements set forth in *Hudson*. *Andrews*, 829 F.2d at 340. Moreover, in *Andrews* we held that even where constitutional concerns were present, the mere appearance of bias arising out of the fact that union officials sat on the AAA board of directors, that union lawyers were involved in the drafting of the AAA agency fee arbitration rules, and that the list of possible arbitrators had been limited by the union's agreement with the AAA to arbitrators who are experienced in "public sector labor relations," was not sufficient to render these procedures constitutionally suspect. *Andrews*, 829 F.2d at 341. *See also Pitta v. Hotel Assoc.*, 806 F.2d 419 (2d Cir.1986) ("The mere appearance of bias

that might disqualify a judge will not disqualify an arbitrator."). It follows that, where, as here, constitutional concerns are not present, the use of AAA selection procedures cannot constitute bad faith or arbitrary conduct by the Union.

■ Appellants' last contention is that the district court erred in dismissing its complaint against GD because GD failed to act reasonably subsequent to the Supreme Court's decision in *Beck*. The basis for this claim is that GD did not immediately cease requiring full dues from non–Union members following the *Beck* decision and that GD did not contest the percentage fee amount established by the Union. That claim lacks merit. It hardly would have been reasonable to expect the employer to implement the procedures required by *Beck* instantly and we agree with GD's contention that those procedures were implemented with reasonable speed especially since appropriate refunds of non-chargeable amounts were made to non–Union members.

Nor are we aware of any authority supporting appellants' contention that where an employer acts as an agent for the collection of Union dues, it may be found to have participated in a breach of the Union's duty of fair representation or to have breached the collective bargaining agreement merely because it has not challenged the post–*Beck* procedures implemented by the Union. Thus, the district court did not err in dismissing the complaint against GD.

■ Finally, the district court properly denied appellants' motion to enjoin appellees from exacting fees until final determination of appellants' agency fee obligations. As the district court observed, appellants claim constitutional and monetary injury. The allegations of constitutional injury fail for want of governmental action. *See supra*. And insofar as the alleged injury is simply monetary, it does not rise to the required level of irreparable harm, *see Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979), especially in light of the fact that any overpayment remains in escrow pending a final

adjudication, *see Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974) (" 'The possibility that adequate compensatory or other corrective relief will be available at a later date ... weighs heavily against a claim of irreparable harm.' " (quoting *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir.1958); *see also Hohe v. Casey*, 868 F.2d 69, 72–73 (3d Cir.1989) (denying preliminary injunction to prevent collection of fair share deductions where fees placed in interest-bearing escrow account until disposition of challenge).

## CONCLUSION

Accordingly, the judgment of the district court is affirmed.