**Jeffrey NIELSEN, Plaintiff,**

v.

**INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, LOCAL LODGE 2569, International Association of Machinists & Aerospace Workers, AFL–CIO–CLC, Mercy Ambulance of Fort Wayne, Inc., Defendants.**

**No. 1:94–cv–337.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

June 21, 1995.

Thomas M. Kimbrough, Barrett and McNagny, Fort Wayne, IN, and Glenn M. Taubman, National Right to Work Legal Defense Foundation, Inc., Springfield, VA, for plaintiff.

Michael S. Huntine, Lewis and Wagner, Indianapolis, IN, Mark Schneider, Upper Marlboro, MD, William T. Hopkins, Jr., Eric H.J. Stahlhut, Gallucci Hopkins and Theisen P.C., Fort Wayne, IN, and Marjorie H. Gordon, Obermayer Rebmann Maxwell and Hippel, Philadelphia, PA, for defendants.

### ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on Mercy Ambulance of Fort Wayne, Inc.'s January 17, 1995, Motion to Dismiss Plaintiff's Complaint Pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. On February 6, 1995, Plaintiff Nielsen filed his Brief in Opposition to the Motion to Dismiss, and on February 14, 1995, Mercy Ambulance filed its Reply. For the following reasons, Mercy's Motion to Dismiss the Complaint is granted.

## FACTUAL BACKGROUND

Plaintiff Jeffrey Nielsen is employed by Mercy Ambulance of Fort Wayne, Inc. Local Lodge 2569 is the exclusive representative of a bargaining unit of Mercy Ambulance employees, including Nielsen. Mercy Ambulance and Local Lodge 2569 are parties to a current collective bargaining agreement. The agreement contains a provision which provides in pertinent part as follows:

Section 1. Agency Shop:

As a condition of continued employment, all employees included within the unit described in Article II [sic] of this Agreement shall either become a member of the Union and pay dues thereto, or in lieu thereof, shall pay an amount equal to the Union's initiation fee and shall thereafter pay to the Union each month, either directly or through payroll deduction, an amount equal to the regular monthly dues and fees in effect for other employees in the bargaining unit who are members of the Union. This obligation shall begin on the first day of the month following completion of six (6) months' employment.

Each member of the bargaining unit covered by this Agreement who has not become a member of the Union, or in lieu thereof, has not tendered the equivalent of Union dues as provided above, within seven (7) days of the first day of any month following the effective date of this Agreement or completion of his/her sixth month of employment, shall be notified by the Union by certified mail, with a copy to the Company's Director of Operations, that failure to pay either dues or agency shop fees within ten (10) days following receipt of such notice shall result in termination of employment. Should the employee fail to make such payment with [sic] the ten-day period, the Company shall, within three (3) working days after receipt of notice by certified mail from the Union, discharge such employee.

(Complaint ¶ 11.)

Shortly after being hired by Mercy Ambulance, Plaintiff Nielsen joined the IAM International and its Local 2569 as a member in good standing. On or about July 5, 1994, Plaintiff Nielsen sent a letter to Local 2569 resigning from membership in the unions and invoking his right to be allowed to pay "reduced dues" pursuant to *Communications Workers of America v. Beck,* 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988). On or about July 22, 1994, Local 2569, by and through its president, Rebecca Smith, sent Plaintiff Nielsen a response indicating that while his resignation from union membership was "accepted," Local 2569 was "in no position to act upon your request to become a fee objector." (Complaint ¶ 14.) The letter also stated: "If you wish to pursue this matter further, I suggest you take the matter up with the General Secretary–Treasurer directly," referring to IAM International's General Secretary–Treasurer. (Complaint ¶ 14.)

On or about August 16, 1994, Plaintiff Nielsen sent a letter to Donald E. Wharton, General Secretary–Treasurer of the IAM International, stating in part:

I hereby notify you that I wish to be a "financial core objector" only, in accordance with the Supreme Court's decision in *CWA v. Beck,* [487 U.S. 735], 108 S.Ct. 2641 [101 L.Ed.2d 634] (1988).

I object to the collection, as well as the use, of any of my money for any purposes other than paying my pro rata share of your *direct* expenses for fulfilling your *limited* statutory duty under § 9(a) of the NLRA to engage in collective bargaining, contract administration and grievance processing for the unit of employees at in [sic] which I am employed.

(Complaint ¶ 16; Exhibit 4 to the Complaint.)

On or about August 24, 1994, Defendant IAM International, by and through its General Secretary–Treasurer, Donald E. Wharton, responded to Nielsen that his objection to the amount of dues and fees that he was required to pay was "not properly perfected under the guidelines set forth in the Official Notice in the December, 1993 issue of *The Machinist.*" Specifically, the Wharton correspondence stated that Nielsen's request "was not postmarked or received during the appropriate 30 day period." (Complaint ¶ 17; Exhibit 5 to the Complaint.) Since July 5, 1994, Mercy Ambulance has continued to deduct from Plaintiff Nielsen's salary an

amount of money equal to the full union dues that voluntary members of the unions pay. IAM International uses some of the money collected from Plaintiff Nielsen for non-representational activities.

The first claim for relief in Nielsen's Complaint is made jointly against both Local 2569 and Mercy Ambulance. Plaintiff Nielsen claims that,

Defendant Local Lodge 2569, in concert with Mercy Ambulance, has violated the

National Labor Relations Act and the fiduciary duty of fair representation that it owes to plaintiff Nielsen ... by negotiating and maintaining [the] union security clause.... That clause is facially invalid because it purports to require the Plaintiff, as a condition of his employment, to pay more than "that portion of union dues and fees attributable to the union's representational activities."

(Complaint ¶ 20.) The plaintiff further claims that the union security clause is facially invalid because it misrepresents the extent and actual limits of the obligation which may be imposed upon them, and by negotiating and maintaining this clause subsequent to *Beck,* Local 2569 has not acted toward Plaintiff and other employees with complete honesty and good faith, but has acted arbitrarily and dishonestly by overstating the limits of their obligation to the union. (Complaint ¶ 21.) Finally, in the first claim for relief, Plaintiff alleges that "Mercy Ambulance, in concert with Defendant Local Lodge 2569, has violated the National Labor Relations Act, as construed by *Beck,* by negotiating and maintaining a union security clause which requires Plaintiff Nielsen, as a condition of his employment, to pay more than 'that portion of union dues and fees attributable to the union's representational activities.'" (Complaint ¶ 22.)

The Plaintiff's second claim for relief alleges that the Union Defendants have enforced the union security provision by requiring the Plaintiff to continue, as a condition of his employment, to pay amounts equal to the dues paid by voluntary union members. (Complaint ¶ 23.) The Plaintiff claims that enforcement of the union security clause violates the duty of fair representation because

it forces Nielsen to pay in excess of his *pro rata* share of the unions' cost of representation, and thereby imposes an obligation which may not be forced upon Nielsen. Nielsen further alleges that Local 2569 and IAM International have not acted toward the Plaintiff with complete honesty and good faith, but have acted arbitrarily and dishonestly toward him and have discriminated against him for impermissible purposes. (Complaint ¶ 24.)

### STANDARD

 In deciding a motion to dismiss for failure to state a claim, this court must take the well-pleaded factual allegations of the plaintiff's complaint as true. *Ashbrook v. Hoffman,* 617 F.2d 474 (7th Cir.1980). The complaint must be considered in the light most favorable to the plaintiff and every doubt must be resolved in the plaintiff's favor. *Henry C. Beck Co. v. Fort Wayne Structural Steel,* 701 F.2d 1221 (7th Cir. 1983). Dismissal is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985) (quoting *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Nonetheless, a complaint "must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory." *Papapetropoulous v. Milwaukee Transport Services,* 795 F.2d 591, 594 (7th Cir.1986). "The heavy costs of modern federal litigation ... counsel against launching the parties into pretrial discovery if there is no reasonable prospect that the plaintiff can make out a cause of action from the events narrated in the complaint." *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 654 (7th Cir.1984).

### DISCUSSION

Mercy maintains (and Nielsen appears to concede) that the second claim for relief does not assert a cause of action against Mercy. *See* Plaintiff Nielsen's Brief in Opposition to Defendant Mercy Ambulance's Motion to Dismiss, p. 4, n. 2 ("The Complaint's second claim for relief deals with the Union Defen-

dant's enforcement of the "fees equal to dues" requirement and their rejection of Plaintiff Nielsen's *Beck* objections. This second claim for relief only indirectly implicates Mercy Ambulance."). The court agrees that the second claim for relief does not state a claim against Mercy Ambulance, and accordingly, the only inquiry before the court is whether the first claim for relief states a cause of action against Mercy.

▉ To the extent that Plaintiff Nielsen is directly challenging the language of the agreement as violating § 8(a)(3) of the NLRA, 29 U.S.C. § 158(a)(3), this court does not have subject matter jurisdiction over the claim. However, while direct challenges under § 8(a)(3) are subject to the primary jurisdiction of the National Labor Relations Board ("NLRB"), *see San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959) ("When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted."), federal courts may decide the merits of a § 8(a)(3) claim "insofar as such a decision [is] necessary to the disposition of [plaintiff's] duty-of-fair-representation challenge." *Communications Workers of America v. Beck,* 487 U.S. 735, 743, 108 S.Ct. 2641, 2647, 101 L.Ed.2d 634 (1988). In *Beck,* plaintiff-employees claimed that the union failed to represent their interests fairly by negotiating and enforcing an agreement that allowed the exaction of funds for purposes that did not serve the employees' interests and in some cases were contrary to their personal beliefs. 487 U.S. at 743, 108 S.Ct. at 2647–48. The necessity of deciding the scope of § 8(a)(3) in *Beck* arose because the union sought to defend itself on the ground that § 8(a)(3) authorized such an agreement. 487 U.S. at 743, 108 S.Ct. at 2648. Under those circumstances, the Supreme Court held that "the Court of Appeals had jurisdiction to decide the § 8(a)(3) question raised by the

[employees'] duty-of-fair-representation claim." 487 U.S. at 744, 108 S.Ct. at 2648.

▉ The question is whether Nielsen has asserted an appropriate cause of action with an appropriate jurisdictional basis, such that the validity of the union security agreement clause under § 8(a)(3) is properly raised. Nielsen claims that his suit asserts "that Mercy Ambulance, while not 'breaching' the contract in the traditional sense, has entered into and enforced a contract which is facially invalid under *Beck* and *Bloom* and fully participated with the IAM unions in their violations." (Plaintiff Nielsen's Brief in Opposition to Defendant Mercy Ambulance's Motion to Dismiss, p. 15.)[1] Therefore, Nielsen maintains that his suit is "quite similar to both *Beck* and the hybrid § 301/DFR suits against unions and employers." *Id.*

Section 301 of the LMRA, 29 U.S.C. § 185(a), provides in pertinent part the following:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties. . . .

29 U.S.C. § 185(a).

▉ The plaintiff cites *DelCostello v. International Broth. of Teamsters,* 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983), for the proposition that the two claims in a hybrid § 301/duty of fair representation case are "inextricably interdependent." However, while the methods of proving the two claims may be very similar, a hybrid suit actually consists of two *separate* claims. As the *DelCostello* Court recognized,

> [s]uch a suit, as a formal matter, comprises two causes of action. *The suit against the employer rests on § 301, since the employee is alleging a breach of the collective-bargaining agreement.* The suit against the union is one for breach of the union's duty of fair representation, which is im-

---

1. With regard to Union Defendants, Nielsen claims that his suit asserts "that the IAM unions violated the NLRA and the duty of fair representation by 'negotiating and enforcing an agree-ment that allows the exaction of funds for purposes that do not serve [his] interests and in some cases are contrary to [his] personal beliefs.'" *Id.*

plied under the scheme of the National Labor Relations Act.

462 U.S. at 164, 103 S.Ct. at 2290 (emphasis added). Thus, the employee must adequately allege a § 301 cause of action against the employer for the claim to survive, regardless of whether the suit is a "hybrid." *See also Vaca v. Sipes,* 386 U.S. 171, 183–83, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967) (noting that under § 301 of the LMRA, "courts have jurisdiction over suits to enforce collective bargaining agreements even though *the conduct of the employer which is challenged as a breach of contract* is also arguably an unfair labor practice within the jurisdiction of the NLRB.")

Plaintiff cites the Supreme Court case of *Smith v. Evening News Association,* 371 U.S. 195, 200, 83 S.Ct. 267, 269–70, 9 L.Ed.2d 246 (1962), in support of his position that § 301 "should not be interpreted so narrowly that jurisdiction over an employer is permitted only in cases where the contract is 'violated,' as opposed to situations where the contract is alleged to be facially unlawful." (Plaintiff Nielsen's Brief in Opposition to Defendant Mercy Ambulance's Motion to Dismiss, p. 16.) However, in *Smith* the plaintiff was suing his employer for an actual breach of a non-discrimination clause. 371 U.S. at 196, 83 S.Ct. at 268. The Supreme Court held that the NLRB necessarily does not have exclusive jurisdiction to deal with an unfair labor practice which also violates a collective bargaining contract. 371 U.S. at 197, 83 S.Ct. at 269. Because the cause of action in *Smith* proceeded based on plaintiff's allegation of the employer's breach of the collective bargaining agreement, this case does not support Nielsen's contention that a breach is not necessary to proceed under § 301.

Nielsen claims that courts have accepted subject matter jurisdiction over employers in identical circumstances, citing *Breininger v. Sheet Metal Workers International Association, Local Union No. 6,* 493 U.S. 67, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989), *Czosek v. O'Mara,* 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970); and *Price v. UAW,* 722 F.Supp. 933, 940 (D.Conn.1989)[2]. Nielsen's statement that an employer may be implicated for participating in a union's breach of the duty of fair representation is not incorrect; however, the plaintiff still must state a valid cause of action when an employer may be implicated in the union's wrongful conduct. In *Czosek v. O'Mara,* the Supreme Court simply found that it could not consider whether employers may always be sued with the union when a single series of events gives rise to claims against the employer for breach of contract and against the union for breach of the duty of fair representation, because the issue was not raised before the Court of Appeals and the union was not materially prejudiced. 397 U.S. at 30, 90 S.Ct. at 773–73. This case does not support plaintiff Nielsen's claim that "courts have accepted subject matter jurisdiction over employers in identical circumstances." (Plaintiff's Brief, p. 17.)

The plaintiff also inappropriately relies on *Breininger v. Sheet Metal Workers Intern.,* 493 U.S. 67, 80–84, 110 S.Ct. 424, 433–35, 107 L.Ed.2d 388 (1989). In *Breininger,* the Supreme Court simply held that while practical considerations may militate in favor of "having the same entity adjudicate a joint claim against both the employer and the union when a wrongfully discharged employee who has not obtained relief through any exclusive grievance and arbitration procedures provided in the collective-bargaining agreement brings a breach-of-contract action against the employer pursuant to § 301(a) of the LMRA," a fair representation action against the union does not *require* a concomitant claim against an employer for breach of contract. *Id.* Interestingly, the Supreme Court states the following:

> Indeed, the earliest fair representation suits involved claims against unions for breach of the duty in *negotiating* a collec-

**2.** Plaintiff's citation to *Price v. International Union, UAW,* 722 F.Supp. 933 (D.Conn.1989), does not support his position. In *Price,* the District of Connecticut held that "[i]t is well established that an employer can be held responsible for violating the NLRA when it 'participates' with a union in arbitrary or unfair activity." 722 F.Supp. at 940. However, *Price* did not hold that the plaintiff is alleviated from having to state a valid cause of action against the employer who may be responsible for violating the NLRA.

tive-bargaining agreement, *a context in which no breach-of-contract action against an employer is possible.*

493 U.S. at 80, 110 S.Ct. at 433 (emphasis added). As the Supreme Court notes, there is no possible action under § 301 of the LMRA for a breach of contract when the claims against the union are for a breach of the duty in actually negotiating the agreement. Yet this is what the plaintiff is attempting to allege: a § 301 cause of action for *negotiating* and maintaining the union security agreement clause.

In sum, this case is not like *Beck*, where the union was sued for a violation of its duty of fair representation (an appropriate jurisdictional basis), raised the § 8(a)(3) issue as a defense, and the Court undertook a "collateral" analysis of § 8(a)(3). In the present case, Nielsen has failed to establish the existence of a valid underlying cause of action through which Mercy might then raise the § 8(a)(3) issue, as in *Beck*. Because Nielsen has not properly alleged a § 301 action, or indeed any action, against Mercy Ambulance, Mercy's Motion to Dismiss is granted.[3]

█ Moreover, the union security agreement clause is not facially invalid. Section 8(a)(3) of the NLRA provides in pertinent part that,

(a) It shall be an unfair labor practice for an employer—

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided,* That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization ... to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later.... *Provided further,* That no employer shall justify any discrimination against an employee for nonmembership in a labor organization ... if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership....

29 U.S.C. § 158(a)(3). Thus, Congress explicitly allowed for employers to make agreements with unions requiring union membership as a condition of employment under certain circumstances.

In *Beck*, the Supreme Court interpreted this statute and held the following:

Taken as a whole, § 8(a)(3) permits an employer and a union to enter into an agreement requiring all employees to become union members as a condition of continued employment, but the "membership" that may be so required has been "whittled down to its financial core." (citations omitted) The statutory question presented in this case, then, is whether this "financial core" includes the obligation to support union activities beyond those germane to collective bargaining, contract administration, and grievance adjustment. We think it does not.

487 U.S. at 745, 108 S.Ct. at 2648. The *Beck* Court, in an opinion authored by Justice Brennan, discussed extensively the similarities between § 8(a)(3) of the NLRA and § 2, Eleventh of the RLA, referring to them as "statutory equivalents," 487 U.S. at 745, 108 S.Ct. at 2649, and noted that in both statutes, "Congress authorized compulsory unionism only to the extent necessary to ensure that those who enjoy union-negotiated benefits contribute to their cost." 487 U.S. at 746, 108 S.Ct. at 2649. Thus, in arriving at its decision in *Beck*, the Court relied heavily on its prior decisions in *Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961) ("[Section] 2, Eleventh contemplated compulsory unionism to force employees to share the costs of negotiating and adminis-

---

3. Nielsen also contends that Mercy Ambulance is an indispensable party under Rule 19(a), Federal Rules of Civil Procedure. However, because this court is granting Union Defendants' Motion for Summary Judgment and Defendant Mercy Ambulance's Motion to Dismiss, the issue of whether Mercy Ambulance is an indispensable party is moot.

tering collective agreements, and the costs of the adjustment and settlement of disputes," but that it was not Congress' intent "to provide the unions with a means for forcing employees, over their objection, to support political causes which they oppose."); and *Ellis v. Brotherhood of Railway, Airline and Steamship Clerks,* 466 U.S. 435, 447–48, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984) (" 'Congress' essential justification for authorizing the union shop' limits the expenditures that may properly be charged to nonmembers under § 2, Eleventh to those 'necessarily or reasonably incurred for the purpose of performing the duties of an exclusive [bargaining] representative.' ")

Relying on these cases and the legislative history of § 8(a)(3) of the NLRA and § 2, Eleventh of the RLA, the Supreme Court concluded that

> § 8(a)(3), like its statutory equivalent, § 2, Eleventh of the RLA, authorizes the exaction of only those fees and dues necessary to "performing the duties of an exclusive representative of the employees in dealing with the employer on labor management issues."

*Beck,* 487 U.S. at 762–63, 108 S.Ct. at 2657.

The holding of *Beck* did not, as plaintiff contends, pertain to the facial validity of a union-security agreement, but rather to the *enforcement* of such an agreement. The Supreme Court noted that "we have never before delineated the precise limits § 8(a)(3) places on the *negotiation and enforcement* of union-security agreements ..." 487 U.S. at 744, 108 S.Ct. at 2648. Again, there is no reference to determining the facial validity of the language contained in the agreement; the focus is on the what interpretation the union gives to the language of the agreement.

Additionally, the two cases that the Supreme Court relies heavily upon in *Beck*— *Street*[4] and *Ellis*-expressly state that they were not deciding the facial validity of the agreements at issue. The *Street* Court found: "[T]he union-shop agreement itself is not unlawful ..." 367 U.S. at 771, 81 S.Ct.

at 1801. In *Ellis,* the Court noted: "[Petitioners] do not contest the legality of the union shop as such, nor could they.... They do contend, however, that they can be *compelled to contribute* no more than their pro rata share ..." 466 U.S. at 439, 104 S.Ct. at 1887–88 (emphasis added) (citations omitted).

In a recent United States Court of Appeals case from the D.C. Circuit, the court addressed a union-security agreement requiring bargaining unit employees to become and remain "members of the Union in good standing." *IUE v. NLRB,* 41 F.3d 1532 (D.C.Cir.1994). In *IUE,* the court held that the facts in the case did not make out a breach of the duty of fair representation, as there was no basis in the record to support the NLRB's finding that the Union engaged in bad faith conduct. 41 F.3d at 1538. In addressing petitioner's argument that the union-security agreement was facially invalid, the D.C. Circuit stated the following:

> [Petitioner's] contention is without merit. Contrary to his claim, *Pattern Makers[' League v. NLRB,* 473 U.S. 95, 105 S.Ct. 3064, 87 L.Ed.2d 68 (1985) ] and *Beck* in no way compel the conclusion that union-security agreements requiring "membership in the union in good standing" are unlawful on their face. *Beck* speaks only to the level of dues an employee may lawfully be required to pay under a union-security agreement. *Pattern Makers* stands only for the proposition that unions may not require full union membership as a condition of employment and may not restrict an employee's right to resign from full membership in the union. *Neither case has anything to do with what language is permissible in a union-security agreement* and, as such, neither case supports [petitioner's] claim.

41 F.3d at 1539 (emphasis added). As specifically noted by the D.C. Circuit, *Beck* has nothing to do with what language is permissible in a union-security agreement, but addresses only the amount of dues an employee

---

**4.** The *Beck* court stated, "Our decision in *Street,* however, is far more than merely instructive here: we believe it is controlling, for § 8(a)(3)

and § 2, Eleventh are in all material respects identical." 487 U.S. at 745, 108 S.Ct. at 2649.

may be required to pay under a union-security agreement. *Id.*

The plaintiff tries to distinguish *IUE* from the present situation. First, Plaintiff quotes the following passage from *IUE,*

In fact from this date forward unions are on notice that they risk breaching their duty of fair representation if they adopt union security provisions of the sort at issue here without appropriate "notice" to employees who are covered by such provisions.

41 F.3d at 1534, and concludes that the D.C. Circuit recognized the illegality of "overly expansive union security clauses" in future cases. (Plaintiff's Memorandum in Support of the Motion for Summary Judgment, p. 13, n. 7.) This passage, however, only indicates that the unions may risk breaching their duty of fair representation, not that union security agreements may be struck as facially invalid. With regard to the facial validity of the agreement, the court states in the very same paragraph as the above-quoted passage that "there is no basis for [petitioner's] claim that the union-security provision at issue in this case is facially invalid under Supreme Court precedent." 41 F.3d at 1534; *see also id.* at 1538–39. Furthermore, the quoted passage from *IUE* states that unions risk breaching their duty if they adopt such clauses *without* appropriate notice to employees. Here, the employees were given appropriate notice through annual publication in *The Machinist.*

Plaintiff also claims that *IUE* is poorly reasoned and internally inconsistent because it describes *Beck* as the Supreme Court's "most recent pronouncement in this area," 41 F.3d at 1535, and then later states that *Beck* has nothing to do with "what language is permissible in a union security agreement." 41 F.3d at 1539. The failure to see the consistency in these statements further evidences Plaintiff's misinterpretation of *Beck. Beck* still is the most recent Supreme Court case on this issue, holding that "§ 8(a)(3) does not oblige employers 'to support union activities beyond those germane to collective bargaining, contract administration, and grievance adjustment.'" 41 F.3d at 1535 (quoting *Beck,* 487 U.S. at 745, 108 S.Ct. at

2648–49). Yet there is a crucial difference between what the union actually enforces against employees and what language in a collective bargaining agreement is facially valid. *Beck* did not reach the latter issue. *IUE* is not, as Plaintiff suggests, "poorly reasoned and internally inconsistent," but is an accurate application of the *Beck* holding.

Plaintiff cites a recent Eighth Circuit case, *Bloom v. National Labor Relations Board,* 30 F.3d 1001 (8th Cir.1994), for his position that the union security clause should be stricken from the agreement. The union security clause at issue in *Bloom* reads as follows:

All Employees of the Employer subject to the terms of this Agreement shall, as a condition of continued employment, become and remain members in good standing in the Union, and all such Employees subsequently hired shall make application and become members of the Union within thirty-one (31) days.

*Bloom v. National Labor Relations Board,* 30 F.3d 1001, 1002 (8th Cir.1994). The court in *Bloom* noted that the Union did not advise Bloom that he could object to having union dues and fees spent on nonrepresentational activities and be charged only the percentage spent on representational activities. *Id.* "Instead, Local 12 advised Bloom that the collective bargaining agreement required that he be a member of the union and that if he did not complete the membership application and the dues checkoff card Local 12 would request that Group Health terminate him." *Id.* The Eighth Circuit concluded that, "[b]ecause the overly broad union security clause was unlawfully interpreted and applied, an adequate remedy in this case requires expunction of the offending clause." *Id.* at 1004.

The facts in *Bloom* are inapposite to those in the present case. Key to the Eighth Circuit's decision was the fact that the Union did not advise Bloom that he could object to having his dues spent on nonrepresentational activities. In the case at hand, Nielsen was advised by the Union of his right to object and the procedures for objecting. The clause was expunged in *Bloom* because the Eighth Circuit found that it was "unlawfully

interpreted and applied" by the Union. In the present case, the clause was not unlawfully interpreted and applied. Contrary to Plaintiff's contentions, *Bloom* is not applicable to this case.

Additionally, *Price v. Auto Workers Local 571,* 927 F.2d 88 (2nd Cir.1991), does not support Nielsen's position. In *Price,* the Second Circuit concluded that the Union did not violate its duty of fair representation because post-*Beck* procedures implemented by the Union were "more than adequate" to meet the fair representation standard: the procedures employed were not arbitrary, discriminatory, or implemented in bad faith. 927 F.2d at 92. *Price* did not address the facial validity of the union security agreement, and Nielsen's attempt to cite *Price* for such a proposition is not well-taken. Moreover, in *Price,* the Second Circuit affirmed a judgment *dismissing* the dues objectors' claims, and left intact and enforceable the union security clause, a conclusion that hardly supports Nielsen's claims.

Finally, Plaintiff cites *NLRB v. Manitowoc Engineering Co.,* 909 F.2d 963 (7th Cir.1990), in support of his position that the clause in the union security agreement is facially invalid because it overstates the maximum obligation that may be required of employees. The collective bargaining agreement in *Manitowoc* required employees who were promoted to supervisor status to maintain union membership (or obtain a withdrawal card) in order to preserve the right to return to work in the bargaining unit with the seniority that accrued during their earlier employment. 909 F.2d at 963. The Seventh Circuit affirmed the NLRB's conclusion that the agreement was invalid on its face because § 8(a)(3) prohibits "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 909 F.2d at 967 (quoting 29 U.S.C. § 158(a)(3)). The NLRB found that with respect to seniority and employment, the agreement "mandates disparate treatment with respect to employment for employees returned to the bargaining unit on the basis of whether or not those employees made the required acquisition." 909 F.2d at 963. The NLRB further found that this disparate treatment encourages union membership. *Id.* The Seventh Circuit held that "nothing seems more reasonable than the Board's conclusion that the distinction created by [the agreement] results in disparate treatment—discrimination—in regard to protected employment (and protected employees)." 909 F.2d at 969.

*Manitowoc* is distinguishable from the present case and does not support Nielsen's position. The union security agreement clause here has to do with dues requirements, while the portion of the agreement at issue in *Manitowoc* dealt with the unique situation where an employee of the bargaining unit was promoted out of the unit and the steps the employee needed to take (while not a member of the unit) in order to retain seniority upon re-entering the unit. In addition, the union security clause at hand does not cover individuals who are no longer represented by the Union, and it does not require membership in the union as a condition precedent to the retention of previously accrued seniority rights. Therefore, *Manitowoc* does not support the plaintiff's position.

In sum, the union security agreement clause is not facially invalid. Nothing in the language of § 8(a)(3) or in the case law supports the plaintiff's proposition that the clause is illegal on its face. Therefore, plaintiff's claim of an allegedly facially invalid union security agreement must be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, Mercy Ambulance's Motion to Dismiss is GRANTED.